## Edward H. Davis v. Frederick Bush and another.

*Practice: Discretionary rulings.* Exceptions which relate to mere discretionary rulings will not be considered on error.

*Rulings that do not prejudice.* Exceptions which refer to questions which, however decided, could have produced no legal prejudice, will not be considered on error.

*Fixed price: Quantum meruit: Estoppel.* Where parties who contract to build a building for another know that their employer understands that they are undertaking the job at a fixed price which they have given him as their estimate of what the building would cost, they will be estopped from asserting, after they have completed the work without undeceiving their employer, that there was no price fixed between them, and claiming that they are entitled to the market value of the work.

DAVIS *v.* BUSH.

*Receipt: Admission: Contract relation: Price: Quantum meruit.* A paper in the form of a receipt, and signed by the plaintiffs, which recites that certain moneys, notes, and mortgages therein specified are received "to apply on building contract as per plan," etc., "the same amounting to $31,000, as follows," etc., upon which subsequent receipts of moneys "as per contract" are endorsed, is held to be an admission and declaration as to what the contract relation of the parties was understood to be as to price, such as to preclude the plaintiffs from recovering upon the *quantum meruit* upon the basis that no price had been agreed upon.

*Heard October 29 and 30.    Decided January 7.*

Error to Kalamazoo Circuit.

*Balch, Smiley & Balch* and *D. Darwin Hughes,* for plaintiff in error.

*Severens, Potter & Boudeman,* for defendants in error.

GRAVES, CH. J.

In 1869 Bush and Pattison constructed the International Hotel at Kalamazoo, for Davis, and in 1870 they sued him on the *quantum meruit* for the labor and materials. He set up in defense that the service and materials sued for were rendered under a special contract which fixed the price at thirty-one thousand dollars; that he had paid this price, and further, that there were defects which entitled him to recoup damage. The jury, under the instructions of the court, found against him, and he caused a bill of exceptions to be settled, and removed the cause hither by writ of error. The exceptions are very numerous. A large number are quite unimportant and would never justify discussion. Very many relate to mere discretionary rulings, and several refer to questions which, however decided, could have produced no legal prejudice.

The stress of the case was upon whether, in the state of things which existed, the defendants in error were entitled to go upon the *quantum meruit* or had restricted themselves to a definite price, and a large mass of verbal testimony was given on this subject.

This testimony was contradictory in itself, and some of

it was open to different interpretation. It embraced statements of parties and representations of conduct supposed to favor or repel the idea that the work was carried on under an express arrangement for a fixed sum. Each of the parties testified. Davis swore that it was expressly agreed that the building should be put up according to plans and specifications for thirty-one thousand dollars; that the defendants in error were to take a specified house and lot at seven thousand dollars, a mortgage against one Penfield of ten thousand dollars, at that sum and the interest upon it, and were to have the residue in cash. Bush swore that the work and materials were not rendered "*under any contract;*" and Pattison, when first examined, swore that he had no knowledge of "any contract" for the construction of the building, and when called afterwards upon the rebutting case he further stated "that there was never any amount fixed upon that was to be paid for constructing that building."

It is fair and reasonable to assume that these parties in denying that there was *any contract*, intended simply to assert that no price was agreed upon. Because the theory of their action as well as many uncontested facts implied the existence of a contract having greater or less scope. The defendants in error were actually employed, and for the entire thing. The business was not undertaken or carried on as piece work. There were plans, specifications, and estimates, and these plans and specifications were designed as guides. Davis claimed that it was agreed that some changes might be made if he should desire any. The whole case shows clearly that there was an express agreement which covered some portion of the transaction. The final controversy was, in substance, whether the parties had so conducted that the price had become settled and fixed, or whether that was a matter still at large and subject to be measured by market value. In the outset the parties talked about the cost. This is certain. Mr. Pattison testified that Davis came to the shop and said he had been talking with

Bush about building a boarding house and wished to talk with him, Pattison, about getting up some plans and speci-fications; that he, Pattison, had a second interview with Davis; that Davis looked at the plans and said they would do, and wished him, Pattison, to go to work and get up some more definite plans; that he, Pattison, told him he would; that at the request of Davis he, Pattison, made an estimate in figures of the cost; that Bush told Davis that if there was no additional work than he, Pattison, had figured upon, the building might be built for that amount. These estimates the defendants in error insisted at the trial, and now insist, were not made as an offer, or as connected with an offer to put up the building at the price they in-dicated, but were made at the request of Davis and solely to assist his judgment in deciding what he would do.

It does not become necessary to inquire how the jury should have been instructed to interpret this part of the transaction, if the circumstances warranted the opinion that Bush and Pattison knew that Davis understood that they assumed the job at the price fixed by their estimate.—*2 Kent, 557; Barlow v. Scott, 24 .N. Y., 40; 1 Parsons on Con., 5 ed., 475 and notes, and 477 and notes; Fry on Spef. Per., 135–145, 2 Am. ed., and notes; Hartford & New Haven R. R. Co. v. Jackson, 24 Conn., 514; Allen v. Mc-Kean, 1 Sum., 276, 304–310.*

The paper plans, specifications, estimates, and an instru-ment dated July 5, 1869, containing certain receipts and recitals, were given in evidence. Most of these, and espe-cially the last paper and the formal specifications, were drawn up when the work was in progress.

The court allowed the jury to take all the papers into consideration as facts with others to enable them to decide whether the parties did or did not come to an express agreement as to the price; but expressly directed them that the matters contained in the paper of the 5th of July, 1869, did not constitute such a contract, and further, that such paper did not preclude the defendants in error from claiming that in fact there was no such contract.

This charge left the jury no alternative but to find for the defendants in error on this branch of the case, if they should be of opinion that the documents when regarded as inducing media merely, and taken in connection with the other circumstances, did not show that a price was agreed on. It absolutely excluded all right to give to these papers or any of them any other effect than such as might be due to them as circumstancial indications of the production of an agreement for the price.

The point upon the propriety of the instruction to the jury will be more apparent by an inspection of the paper of the 5th of July, as set forth in the bill of exceptions. It reads as follows:

"Received of E. H. Davis seventeen thousand two hundred and twelve and thirty-nine one hundredth dollars, as follows: May 6, 1869, twenty-five hundred dollars; June 2, 1869, three thousand and one hundred and sixty-six dollars; July 5, 1869, Penfield mortgage for ten thousand dollars, interest thereon from January 1, 1869, five hundred dollars; H. S. Parker & Co.'s note, one thousand dollars, interest thereon forty-six and thirty-nine one hundredth dollars, the same to apply on building contract as per plan and specifications made by Bush and Pattison, the same amounting to thirty-one thousand dollars, as follows:

Davis house, corner of Burdick and Dutton streets--$7,000
Penfield mortgage $10,000, interest and cash $14,000---24,000

Total---------------------------$31,000

July 5, 1869.                         BUSH & PATTISON.

$500.  Received as per contract five hundred dollars, July 7, 1869.

$7,000.  Received as per sale of house, seven thousand dollars, July 15, 1869.

$2,550.  Received as per ——— twenty-five hundred and fifty dollars, July 23, 1869.

$2,834.  Received as per ——— twenty-eight hundred and thirty-four dollars, August 3, 1869.

BUSH & PATTISON."

It was stated at the bar, and not disputed, that in point of fact each of the last two endorsements specified like the first that the payment was as "per contract." But the printed record is as here given, and whichever version is correct the meaning will not be varied. There was no question about the authenticity or validity of this paper. The controversy was upon its construction, import and effect.

The defendants in error insisted that it was a mere voucher or receipt, and entitled to no higher or óther consideration than would be due to a bare acknowledgment of defendants in error of the receipt of so much money from Davis on the work and materials. It does not appear what precise view the court below took of the instrument. He, however, expressly told the jury that it did not constitute a contract, and, as already stated, that it did not preclude the defendants in error from claiming that there was in fact no contract.

We cannot concur with the court below in this position. We think it was incorrect and misleading. The instrument was undoubtedly, as claimed by defendants in error, a receipt. But it was something more, and it had a special bearing upon the rights of the parties in the pending litigation, beyond that of a mere general receipt of money for work and materials supplied and used in connection with the particular building.

Of course it was not the embodiment in writing of a contemporaneous agreement, unless it was the result of some understanding then reached, and it does not appear that the parties were then treating to agree upon terms.

It appears to have been drawn in reference to a pre-understood arrangement, an arrangement which the parties recalled to their attention when the writing was made. There is no suggestion or indication that it originated in any fraud or mistake, and the signs are that it was deliberate.

Whether it is susceptible of being considered as the

formal record of a past verbal express contract so as to bind in that sense is not material in the present posture of the case.

It expressly declared what the contract relation of the parties was understood to be in respect to price, and plainly imported that the defendants in error were entitled to a fixed price, namely, thirty-one thousand dollars, and not an indefinite amount for the job; and by consequence as plainly negatived the proposition that they were authorized to claim some indefinite compensation, some amount or price dependent upon the state of the market. Upon the footing of this explicit declaration and admission that their demand was considered as specific and not one upon *quantum meruit*, Davis paid, and they deliberately received and acknowledged nearly thirteen thousand dollars.

Was it admissible for the defendants in error after such declaration and admission, and after such payments and receipts upon the basis of it, to shift their ground and take an inconsistent position? Were they at liberty to say that having got all they could by putting one face upon the transaction, they would then repudiate as one no longer of service to them the status they had thus admitted, and put forward another and inconsistent position and relation in order to get more?

Unless we depart from settled principles, these questions must be answered in the negative, even though we should feel that defendants in error would have been warranted in steadily standing out from the beginning for a different measure of compensation. If they meant eventually to contend that their true contract relation with plaintiff in error was one giving them the right to require him to pay according to the standard of market value because no price was settled upon, they should have acted, in dealing with him about the rate and in receiving pay, consistently with that construction of the transaction, or at least they should have avoided the contradictory and misleading course which was taken.

In the light of this record it appears that the parties deliberately determined for themselves that the contract relation between them had an identical character; that it was specific as to price, and not general; that it gave defendants in error the right only to call for pay, and imposed on Davis only the duty of paying a fixed and ascertained amount, and not a fluctuating one, and that they respectively acted and changed their conditions on the basis of such determination. The paper of the 5th of July went to establish this state of things, and there seems no reason to doubt but that it was sufficient to preclude the defendants in error from claiming that the price was not thereby liquidated.—*Broom's Max.*, 160 ; *Farrow v. Bragg, 30 Ala.*, 261 ; *Rodermund v. Clark, 46 N. Y., 354 ; Sanger v. Wood, 3 J. C. R., 416* ; *Morris v. Rexford, 18 N. Y., 552 ; O'Donnell v. Kelsey, 6 Seld., 412 ; Phila., Wil. and Bal. R. R. Co. v. Howard, 13 How., 307 ; Hooker v. Hubbard, 102 Mass., 239 ; Tobey v. Chipman, 13 Allen, 123 ; Stagg v. Ins. Co., 10 Wall., 589 ; Harding v. Ambler, 3 M. & W., 279 ; Davenport v. Wheeler, 7 Cow., 231 ; Gillespie v. Carpenter, 1 Robertson, 65 ; Frost v. Mutual Ins. Co., 5 Denio, 154 ; Hills v. Lanning, 24 E. L. & E., 452 ; Ashpitel v. Bryan, 3 B. & S., 474 [E. C. L., Vol. 113]; Donohue v. Woodbury, 6 Cush., 148 ; Wilkinson v. Byers, 1 Adol. & Ell., 106 ; McDaniels v. Lapham, 21 Vt., 223 ; Babcock v. Hawkins, 23 ib., 561 ; Palmerton v. Huxford, 4 Denio, 166 ; Lilley v. Adams, 108 Mass., 50.*

The jury were therefore wrongly instructed on this vital question, a question upon which the case most probably turned, and on that account the judgment must be reversed, and a new trial ordered.

As there is little reason to suppose that any of the other points which are worth considering will come up on another trial, their discussion is waived.

COOLEY and CAMPBELL, JJ., concurred.

CHRISTIANCY, J., did not sit in this case.