JOHN W. HOPKINS AND WILLIAM M. FERRY v. SAMUEL R. SANFORD AND SAMUEL B. PECK.

*Logging contract—Advances—Mutual obligation—Damages.*

A firm of loggers contracted to provide four million feet of logs for sawing and had the option of furnishing logs to the amount of two millions more, the mill-owners to advance cash at the rate of $3 a thousand, as called for.    *Held* that if the loggers called for advances beyond the proper amount for four million feet, they were also bound to furnish logs accordingly, and could not treat the extra advances as a loan.

Damages for breach of contract should be such as may fairly and reasonably be considered as arising from the breach itself, or to have been contemplated by both parties when they made the contract as the probable result of the breach.

Error to Muskegon.   Submitted April 5.   Decided April 9.

ASSUMPSIT on contract.   Defendants bring error.

*J. C. FitzGerald* for plaintiffs in error.

*Smith, Nims & Erwin* for defendants in error.

MARSTON, J.   The questions raised in this case depend upon the construction to be given the written contract in view of the advances made thereunder.

Under this contract Sanford & Peck were to procure from certain lands owned by them, during the winter and spring of 1870 and 1871 not less than four million, and from that up to six million of pine saw logs.   Hopkins & Co. were to "advance in cash from time to time as called for, to the amount of three dollars per thousand feet, say twelve thousand dollars upon four million feet of logs, and relatively the same for a greater number of thousand feet."   Certain other advances were to be made but no question arises concerning them.   The referee found "that during the time said logging job was going on, the defendants, Hopkins & Co., advanced money to the plaintiffs, to the amount of fifteen thousand dollars," and also made the other advances according to the contract.   The referee also found as a conclusion of law, that under the circumstances Sanford & Peck were not bound to furnish over four million, and consequently were not liable in damages for a failure to deliver beyond that quantity.

In this view of the case we are of opinion the referee erred.   It certainly was optional with Sanford & Peck in the first instance under their contract to put in any beyond the four million, but when from time to time they called for and received the advance of three dollars per thousand feet, they thereby obligated themselves to put in to the extent of such advances,—not exceeding the six million,—as under this clause of the

contract they could only call for an advance of three dollars upon each thousand feet put in by them. When they had received this advance upon four million feet, and afterwards called for and received three thousand dollars more, the only reasonable construction that could be placed thereon, under the contract, would be that they intended and thereby undertook to put in an additional million feet of logs. Under the contract they were entitled to this advance of fifteen thousand dollars, for the sole reason that they had or would put in, within the time fixed by the contract, five million feet, and they could not call for and receive this money under the contract, and then say that it was nothing but a loan. If they did not intend to bind themselves to put in over four million feet, they should have acted consistently with that intention, and not have called for advances which they were not entitled to, except upon the theory that they would put in to exceed that quantity. The case of *Davis v. Bush*, 28 Mich., 432, is decisive upon this question.

The judgment must therefore be reversed and a new trial ordered, but should we not direct attention to another question, it might be claimed that we approved of the measure of damages, adopted by the referee for non-delivery of the contract quantity of logs, viz.: $1.50 per thousand feet, that being the profits on manufacturing under the contract. The rule laid down by the court of exchequer in *Hadley v. Baxendale*, 9 Exch., 341, has frequently been recognized and followed in this State. In cases of breach of contract the damages "should be such as may fairly and reasonably be considered either arising naturally, *i. e.* according to the usual course of things, from such breach of contract itself, or, such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach of it." Was it according to the usual course of things from the breach of the contract in this case, that the mill

of Hopkins & Co. should lie idle? Or could they have
obtained a sufficient supply of logs for that season, after
the breach, from other sources, at the same or a less
saw-bill? Or in case they could not, would such failure
be a usual one,—something that might naturally and
reasonably have been expected,—or was it owing to special
and peculiar circumstances existing at that time? Or
under the other theory, could the parties at the time
the agreement was made, or at the time the advances
over and above for the four million were made, reason-
ably be supposed to have contemplated the fact that the
mill would have to lie idle, as the probable result of the
failure to put in the five million feet or any part thereof?
As the case now stands under the finding of the referee,
these questions may not be free from doubt, but as the
showing upon a new trial may assume a somewhat dif-
ferent aspect, we express no opinion upon these
questions.

The judgment must be reversed with costs and a new
trial ordered.

The other Justices concurred.