DUDLEY O. WATSON v. GEORGE MEAD AND PHILENA MEAD.

*Fraudulent conveyances—Right to attack—Chattel mortgage—Failure to renew—Husband and wife—Exemptions.*

1. Where chattel-mortgaged property is levied upon and sold under a claim that the mortgage is fraudulent as to creditors, and the wife of the mortgagor purchases a portion of the property, which is replevied by the mortgagee, she can attack the mortgage for fraud, to the extent of the property purchased by her, on the trial of the replevin suit.

2. *Cooper v. Brock*, 41 Mich. 488, holding that an unfiled chattel mortgage is absolutely void as against creditors or subsequent purchasers or mortgagees, unless there is an immediate delivery and an actual and continued change of possession of the property, and *Briggs v. Mette*, 42 Mich. 12, 14, holding that annual renewals are to be made in case of an existing mortgage, not only for the information of the general creditors of the mortgagor, but quite as much for the information of those who may have become purchasers or mortgagees in good faith dur-

ing the vigor of the earlier mortgage, seem to have been over-ruled by—

*a—Brown v. Brabb,* 67 Mich. 17, holding that an *unfiled* chattel mortgage, valid as between the parties, is equally valid and effective as against the assignee for the benefit of the creditors of the mortgagor, who became such prior to the date of the mortgage, and have not been led to do or to omit doing anything upon the strength of such non-filing.

*b—Wade v. Strachan,* 71 Mich. 459, holding that the "subsequent purchasers or mortgagees in good faith," referred to in How. Stat. § 6196, are those who become so *after* the expiration of one year from the filing of the mortgage, and *before* its renewal; and that, while the filing of a chattel mortgage ceases to be constructive notice at the expiration of one year, its renewal preserves its lien as to all persons except those acquiring liens, and purchasers or mortgagees, in good faith, in the interim, with the like force and effect as if it had been renewed prior to the expiration of said year.

*c—Littauer v. Houck,* 92 Mich. 162, holding that where the attorneys for creditors of a mortgagor of chattels have been informed by the mortgagee of the existence of the mortgage prior to receiving from the creditors a claim for collection contracted before its execution, which mortgage is filed in the wrong office, their knowledge is that of the creditors, and the mortgage is valid as against a levy on the mortgaged property made by direction of the attorneys under an execution issued on a judgment recovered by them on said claim.

*d—First National Bank v. Guntermann,* 94 Mich. 125, holding that an unfiled *bona fide* chattel mortgage is valid as against creditors whose claims accrued prior to its execution, but not as against creditors who became such during the time between the execution of the mortgage and its filing, without knowledge of its existence.[1]

---

[1] For other cases bearing upon the construction of How. Stat. §§ 6193, 6196, which provide for the filing and renewal of chattel mortgages, see:

1. *Flory v. Comstock,* 61 Mich. 522, holding:

*a*—That, where a chattel mortgage contains a clause showing that it is made subject to a prior one, filing is unnecessary to maintain such priority.

*b*—That a second mortgagee, whose mortgage was taken subject to a prior mortgage, duly filed, given to secure a debt of a firm of which he was then a member, cannot claim priority for a mortgage executed to him by the other copartner, by reason of the non-renewal of the prior mortgage.

2. *Transportation Co. v. McMorran,* 73 Mich. 467, holding that keeping a chattel mortgage from record operates as a practical fraud on persons who become interested as stockholders in property which they have no reason to suppose incumbered.

3. A chattel mortgage executed by a husband alone upon property
a portion of which belongs to that class of exempt property
a mortgage of which is declared by How. Stat. § 7686, to be
void unless also executed by the wife, is void only to the
extent of the exempt property.[1]

---

3. *Merrill v. Denton*, 73 Mich. 628, holding that a chattel mort-
gage executed by a debtor to secure a creditor, and retained in
the debtor's possession for a time, when it is filed and notice given
to the creditor, who accepts the security, but who had no prior
knowledge or notice of its execution, or agreement with the debtor
therefor, has no legal existence until delivery, which takes place
on such acceptance.

4. *Cutler v. Steele*, 85 Mich. 627, holding that unrecorded chattel
mortgages are void as against creditors of the mortgagor who have
accepted renewal notes, or extended the time of payment on old
debts for a definite period, in reliance upon the non-existence of
such mortgages.

5. *Dempsey v. Pforzheimer*, 86 Mich. 652, holding that a creditor
who has the right to secure a lien by legal process superior to that
of a chattel mortgage then on file, because his debt was contracted
while the mortgage was withheld from record, may obtain a like
lien by the execution to him by the debtor of a chattel mortgage
to secure the same indebtedness after the filing of the first mort-
gage.

6. *First National Bank v. Weed*, 89 Mich. 357, holding that, under
How. Stat. § 6193, which requires chattel mortgages executed by
non-residents of this State to be filed in the office of the clerk of
the township "where the property is," such filing must be in the
township where the property is situate at the time of the execution
of the mortgage.

7. *Read v. Horner*, 90 Mich. 152, holding that actual notice to
the purchaser of property of an unrecorded chattel mortgage thereon
is equivalent to filing the mortgage, under How. Stat. § 6193.

8. *Kennedy v. Dawson*, 96 Mich. 79, holding that the assignee of
an insolvent debtor is entitled to the possession of the assigned
property as the representative of creditors who became such, or
who extended an existing credit, after the making and before the
filing of a chattel mortgage given by the assignor before making
the assignment, in the absence of a tender by the mortgagee of
the amount of their claims.

9. *Lord v. Wirt*, 96 Mich. 415, holding that vendors who sell goods
to a merchant during the time a chattel mortgage is withheld from
record, without actual notice of its existence, are not in *fact* de-
frauded, as their rights are in no way jeopardized by the giving
of the mortgage.

See, also, *Manwaring v. Jenison*, 61 Mich. 121; *Iron Works v.
Teuton*, 67 Id. 623; *Corbett v. Littlefield*, 84 Id. 30. And see cases
cited in note to *Damm v. Mason*, 98 Mich. 237.

[1] For cases bearing upon the question of the right of a husband
to dispose of exempt property, and of the wife to bring suit
therefor, and the form of the declaration, see *Miller v. Miller*, 97
Mich. 151, and note; and see Act No. 43, Laws of 1893, which
places sewing-machines owned by individuals, and kept for the
actual use of themselves or their families, under the protection of
the statute cited.

4. Where a chattel mortgage is given to secure the claims of several creditors, who are named as mortgagees, and whose claims are further evidenced by the accompanying notes of the mortgagor, one of said creditors may proceed to collect his debt by a foreclosure of the mortgage, or may protect himself by seizing the property, if in danger of destruction or loss, without joining the remaining mortgagees as plaintiffs, which he would have no right to do without their consent, and he will hold possession of the property subject to the rights of his co-mortgagees.[1]

5. Where a chattel mortgage authorizes the mortgagee to take possession of the mortgaged property in case of its sale by the mortgagor without the written assent of the mortgagee, and such assent is afterwards given on condition that the money realized shall be applied to the payment of the mortgage debt, on a breach of such condition, a right inures to the mortgagee to take possession of the property.

Error to Ottawa. (Padgham, J.) Argued November 22, 1893. Decided January 5, 1894.

Replevin. Defendants bring error. Reversed. The facts are stated in the opinion.

*Walter I. Lillie* and *James Cilley (Fletcher & Wanty,* of counsel), for appellants.

*George A. Farr (Thomas F. McGarry* and *William F. McKnight,* of counsel), for plaintiff.

HOOKER, J. The plaintiff brought replevin against the defendants, who are husband and wife, for the recovery of a large number of chattels, which he claimed by virtue of a chattel mortgage executed by George Mead, one of the defendants. The wife did not sign it. Included in the mortgage were some horses, cows, and sheep.

The defendants attack the validity of the mortgage on

---

[1] See *Lyon v. Ballentine,* 63 Mich. 97, holding that a chattel mortgage may be given to two or more creditors to secure several debts, and either mortgagee may foreclose for his claim, or they may foreclose jointly.

several grounds,—among others (1) that it was made with intent to hinder, delay, and defraud creditors; (2) that it included exempt property, requiring the wife's signature.

The mortgage named several persons as mortgagees, among them this plaintiff, and was given for an amount sufficient to cover their several and respective claims, notes being executed for each claim. The plaintiff had four such notes,—one for $32, a second for $186.19, one for $340, and another for $500. The plaintiff testified that Mead did not owe him the amount of the $500 note, and that he did not know why it was included. Mead's version was that there was some talk that one McNaughton, a creditor of Mead, "was coming up to skin him," and that this mortgage was then made; that at first they did not talk of its being given for more than the amount due Watson, but they changed their minds, and gave it for the amount mentioned; that Mead said, "If I give it for that, I want your note back;" but he (Watson) said: "No; that wouldn't be proper. We will take your note for $500, and I will give you a receipt; that will—If I accommodate you, and let you have some money, that will accommodate me." This was done. The mortgage was filed, and after the expiration of a year, no affidavit of renewal having been filed, McNaughton levied an execution upon four horses mentioned in the mortgage, and sold them upon execution sale to Mrs. Mead, who paid for them by giving McNaughton a mortgage upon them. Mrs. Mead now claims the right to attack the mortgage for fraud.

It is elementary that a mortgage made with the collusive intent to hinder, delay, and defraud creditors may be treated as void by the creditor, who may levy upon and sell the property, and the purchaser may raise the question upon the trial, if the goods are replevied. No question seems to have been raised over the regularity of the judg-

ment, execution, or sale.    Mrs. Mead could attack the mortgage for fraud to the extent of the property purchased by her at the execution sale.

Again, How. Stat. § 6196, provides:

"Every such mortgage shall cease to be valid as against the creditors of the person making the same, or subsequent purchasers or mortgagees in good faith, after the expiration of one year from the filing of the same, or a copy thereof, unless, within thirty days next preceding the expiration of the year, the mortgagee, his agent or attorney, shall make and annex to the instrument or copy on file as aforesaid an affidavit, setting forth the interest which the mortgagee has, by virtue of said mortgage, in the property therein mentioned; upon which affidavit the township or city clerk shall indorse the time when the same was filed: *Provided*, that such affidavit, being made and filed before any purchase of such mortgaged property shall be made or other mortgage received or lien obtained thereon in good faith, shall be as valid to continue in effect such mortgage as if the same were made and filed within the period as above provided."

It is contended that under this statute the mortgage had ceased to be valid as against McNaughton.    See *Cooper v. Brock*, 41 Mich. 488; *Briggs v. Mette*, 42 Id. 12. But these cases seem to have been overruled.    See *Brown v. Brabb*, 67 Mich. 17; *Littauer v. Houck*, 92 Id. 162; *First National Bank v. Guntermann*, 94 Id. 125; *Wade v. Strachan*, 71 Id. 459.

The trial court refused to submit the question of fraud to the jury.    He also excluded the question asked 'the plaintiff upon cross-examination: "Did you know, at that time, that he was owing McNaughton?" This was error. The answer should have been taken, and the question of fraud should have been submitted.

Counsel for defendants assert that the mortgage was void for another reason, viz., that it included exempt property. We cannot hold that the mortgage was wholly void for that reason.    Doubtless, it was void to the extent of the

exempt property. If the wife had replevied, she would thereby have made her selection. The mortgagee having replevied, there should be no difficulty in taking a verdict that would distinguish the exempt property, if the animals claimed as exempt were described in the testimony. As to the remainder of the property other than that purchased, and that exempt under the provision requiring her signature to the mortgage, she cannot attack the mortgage upon either ground; nor can her husband, who is not at liberty to set up his own fraud to defeat his mortgage.

Defendants further contend that, inasmuch as the mortgage was not due, the plaintiff was not entitled to the possession of the property, and therefore cannot maintain replevin.

The first assignment of error alleged is that the court admitted the chattel mortgage in evidence. This is based upon the ground that the mortgage is made to several mortgagees, and that one alone could not replevy. No authorities are cited by counsel for the defendants in support of this contention, and there seems to be no reason why one of several mortgagees may not proceed to collect his debt by foreclosure, or to protect himself by seizing the property if in danger of destruction or loss, without joining others as plaintiffs without their consent, which he would have no right to do. His possession would be subject to the rights of the other mortgagees, but the mortgagor could not complain. Herm. Chat. Mortg. § 143; *Burnett v. Pratt*, 22 Pick. 556; *Gilson v. Gilson*, 2 Allen, 115; *Lyon v. Ballentine*, 63 Mich. 97. The mortgage was admissible.

The plaintiff bases his right to replevy upon the claim that the defendant George Mead had sold 250 bushels of wheat, and the lambs born subsequent to the time that the mortgage was made, and the wool sheared from the sheep, and applied the moneys obtained from such sales to his

own use, instead of to the payment of the mortgage. This right to sell the mortgaged property was based upon a writing giving him authority to do so, provided that he applied the money received to the payment of the mortgage. If he sold property covered by the mortgage contrary to the conditions of the mortgage and accompanying license, the right to take possession inured to the plaintiff, by the express terms of the mortgage. As the wheat was covered by the mortgage, the misapplication of the money received from it authorized the plaintiff to bring his action. This being so, we need not consider the effect of the sale by defendant of the wool and lambs, or the effect of the execution sale, upon plaintiff's right to possession.

There are other assignments of error, which need not be discussed. We will only add that defendants' theory upon the subject of damages for the detention of property during the pendency of the action is erroneous. A notice accompanied the plea, under which defendants sought to recover damages for the loss of their farm. They claimed that by being deprived of their implements they could not put in any crops; hence they received no money, and could not make payments due on the farm, and they were, in consequence, compelled to deliver up possession, and surrender their contract of purchase, and, to quote, "lost everything they had on earth." Without attempting to lay down a rule, we mention this subject to prevent a possible error upon another trial.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.