CARNEGIE, PHIPPS & CO., LIMITED, v. JOHN C. HOLT.

*Contract—Breach—Damages—Delay in furnishing material.*

In a suit to recover the balance due for materials furnished for the construction of a·building, it appeared that there was an unreasonable delay of from four to six weeks immediately prior to January 1, when the building was completed, in delivering the materials, and that there were heavy rain storms in the previous December, which, by reason of the roofless condition of the building, filled the basement with water and caused the foundation walls to settle. The defendant sought to recoup the resulting damages. And it is held that the delay was not the direct and proximate cause of the coming of the storms or of the damages; and their recovery is denied.

Error to Kent. (Adsit, J.) Submitted on briefs January 31, 1894. Decided April 10, 1894.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*T. J. O'Brien* and *J. H. Campbell,* for appellant.

*Bundy & Travis,* for plaintiff.

LONG, J. Plaintiff entered into a contract in writing to sell and deliver to defendant the steel columns and beams for the interior framework of a building at Grand Rapids, this State. Plaintiff resides at Pittsburgh, Penn. The contract was made up of certain letters passing between the parties. The price was agreed upon for the materials at the sum of $13,714.03, of which amount $4,000 was paid, and this suit was brought in the Kent circuit court to recover the balance. On the trial, defendant sought to recoup damages. The contract specified the materials, prices, and terms of payment, and contained

the following stipulations as to deliveries. In plaintiff's letter of May 23, 1890, it was said:

"Touching the time and manner of delivery, it is understood that the basement material will be ready for shipment in 30 days from this date. The first and other floors to be shipped thereafter as may from time to time be ordered by your architect; you giving us, in each instance, reasonable notice as to the time required for the material to be on the ground. It is our intention to get all of this material ready as fast as possible, that there may be no delay at our end of the line in shipping when the material is wanted, but, as our storage capacity is limited, we do not like to have material out very far in advance of the wants of our customers; and we presume it would not be desirable, on your part, to have the material come in very much in advance of your wants."

Defendant answered on May 28, accepting the proposition, and saying:

"That part of the beams and bars that are necessary for basement are to be shipped from Pittsburgh 30 days from May 23; balance of material to come forward as required, reasonable notice being given."

The greater part of the materials were sent under the above contract. Some additional materials for carrying up the rear part of the building from the second to the sixth story were sent under a supplemental contract, and substantially the same stipulations were made, as to deliveries, as in the first contract. It will be seen, therefore, that the contract was that plaintiff should furnish the steel material for the construction of the building,—that part necessary for the basement to be shipped from the plaintiff's works within 30 days from May 23, and for the balance of the work within a reasonable time after notice to plaintiff that the defendant required it to be shipped. As to the additional material ordered, this was also to be shipped within a reasonable time after such notice. There is no controversy but that the plaintiff furnished all the material

called for by the contract, the only contention being upon the question whether it was shipped within the time or times specified; the defendant claiming that it was not so shipped, and that he sustained damages by reason of such delays. Testimony was introduced on the trial showing, or tending to show, when each order for shipment was given by the defendant, and also when each shipment was made. It appears that there were some delays in shipment after some of the orders were given, and the building was not completed, and the roof put on, until about the 1st of January, 1891. These delays, it was claimed by the defendant, were unreasonable. In December heavy rain storms came on, and the basement was filled, or partly filled, with water, in consequence of which the foundation walls settled, to some extent, on one side. It is claimed also that, the walls being wet, the plastering was affected. The plastering was done after the roof was put on, in January. The balance due the plaintiff, on the face of the account, at the contract price, was $9,714.03, with interest to be added, as the shipments were on 30 days' time. The plaintiff would be entitled to recover that sum, unless the defendant established his counterclaim for damages for delay by plaintiff. There was no other defense. The jury reduced the plaintiff's claim something over $1,600. Defendant brings error.

It is evident that the jury found that the plaintiff had committed breaches of the contract by delays, and that its delays had caused delay in the completion of the building, and in consequence thereof damages had been sustained by the defendant. The court submitted to the jury some of the claims of defendant for damages caused by delay. The building was erected for the purpose of rent. Damages were claimed, on account of delays, for loss of rent, increased cost of construction, and by reason of improperly punched beams. The court instructed the jury:

"If the defendant is entitled to damages, he is entitled to recoup against the plaintiff's claim for the net rental value of the building for the particular time you may find the completion of the building was delayed by reason of plaintiff's default in the shipment of the material which it contracted to furnish. It is claimed on the part of the defendant that the delay in the completion of the building, by reason of the plaintiff's default, was from three to four months, more or less, and that such time was in the winter of 1890-91. It is for you to say from the evidence whether or not this claim is supported either in whole or in part."

This was a fair submission of the question to the jury. The court also very fairly submitted to the jury the further question whether there had been an increased cost of the building by reason of such delays, and also what damages, if any, had been sustained by reason of the improper and imperfect punching of the beams.

The court was asked by plaintiff's counsel to charge, and did charge, the jury that—

"The claim for damages on the part of the defendant resulting from the drenching of the walls of the building by rain is not a proper charge against the plaintiff in this case, and the evidence relating thereto has been stricken out of the case by the court; and the question of such alleged damages resulting from said drenching of the walls is entirely out of the case, and should not be considered by you in your deliberations."

The giving of this request raises the main contention in the case. The reason given by the court, in ruling out this element of damages, was that the injury to the building from the rains was too remote and uncertain to constitute an element of damages.

The court was not in error in this part of the charge. From the amount deducted as damages by the jury, they must have found from one month to six weeks' unreasonable delay in shipping the materials after the orders were

given. It cannot be said that the parties, in making the contract, contemplated that the weather would be fair up to the middle or last of November, but that in December rains would come and drench the building, weakening the foundations. Neither can it be said that the drenching of the building by an unusually heavy rain in December was an ordinary, proximate, and direct result of plaintiff's delay. It is a well-known fact that severe rain storms may come in September or October as well as in November or December, and a storm in the earlier months would be as likely to drench the walls and weaken the foundation as one coming later in the season. As said in *Hadley v. Baxendale*, 9 Exch. 354, and cited by this Court with approval in *Hopkins v. Sanford*, 38 Mich. 613:

" Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either as arising naturally—*i. e.*, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated."

It is contended by counsel for defendant that the "special circumstances" in the present case were fully communicated to the plaintiff when this contract was made. The circumstances communicated were that a brick building was to be erected, and plaintiff was to furnish the steel work for the interior. Of course, it was contemplated that the

work could progress only so rapidly as this steel work was furnished; but it was to be furnished only from time to time, as ordered by the defendant, and there was to be no unreasonable delay.  But it cannot be said that there were any special circumstances surrounding the contract, by which it may be inferred that the parties contemplated fair weather to a certain date, and after which time certain rain storms would come on, and drench the walls and weaken the foundation, as a rain storm in any other month might have produced the same result.  In *Clark v. Moore,* 3 Mich. 62, it was said:

" No damages are ever recoverable in actions *ex contractu,* unless they are shown by the party claiming them to be the natural and proximate consequence of the breach complained of.  Of course, each of the circumstances which concurred with the breach in producing the damage, and without which it would not have happened, is a part of its cause; and, if any of these concurring circumstances are so far out of the ordinary course of nature or of human affairs that they cannot fairly be presumed to have been contemplated by the parties at the time of making the contract, then the damage is not the natural result of the breach, and is therefore not recoverable."

This case was cited and approved in *Michigan Central R. R. Co. v. Burrows,* 33 Mich. 6, and the above language quoted.  In that case the plaintiff complained that, because of unreasonable delays in the shipment of apples, they were, by reason of the change of the weather, badly frosted and damaged.  It was said:

" If, in the ordinary course of events, a certain result usually follows from a given cause, then we may well consider the immediate relation of the one to the other to be established.  Cold, freezing weather does not, however, in the ordinary course of events, follow from mere delay. Such is not the natural and direct result of the delay.  It is true that in certain climates, and at certain seasons, such an injury would be much more likely to result from delay, while at others there would be not even a possibility

of such a result following.    It is very evident, therefore, that, as we approach the one or the other, we must enter upon debatable ground, where it would be very difficult, if not, indeed, impossible, to say what the result of a given delay would be."

Whether the court was right or wrong in the reasons given for the exclusion of evidence offered by the defendant upon this question, and for giving plaintiff's request to charge, is not material.    The exclusion of the testimony was proper, and the court was right in giving this request. The delay was not the direct and proximate cause of the coming of the storms in December, or of the damages resulting from such storms.

Some other errors are assigned, but we have examined the questions raised, and are satisfied that the court was not in error in the exclusion of evidence, or in the charge.

The letters making complaints of delays were admitted in evidence, and the court very properly stated to the jury that they could not be considered as proof of delays because complaint was made in them.    They were properly received to show the time when the orders were given for shipment.

The judgment must be affirmed.

McGrath, C. J., and Grant, J., concurred with Long, J.  Hooker, J., concurred in the result.    Montgomery, J., did not sit.