DEAN v. RADFORD.

DAMAGES—ATTORNEY AND CLIENT—BREACH OF CONTRACT—PROXIMATE CAUSE.

> After foreclosure of a mortgage had been threatened for default in payment of a semi-annual installment of interest, the mortgagor placed sufficient funds in the hands of his attorney to satisfy the immediate payment. This the attorney delayed doing until proceedings were begun, whereupon the mortgagee demanded a further sum as attorney's fee and another installment of interest. The mortgagor being unable to raise this further sum, foreclosure followed, and the property was sold for less than its value. *Held*, that the attorney was not liable to the mortgagor for the difference between the value of the property, and the price for which it sold, since it could not be said that if the payment had been made as agreed, the mortgagor would have been able to meet successive payments and avoid foreclosure.

Error to Wayne; Frazer, J. Submitted May 2, 1905. (Docket No. 129.) Decided July 21, 1905.

Case by Edgar S. Dean against George W. Radford for malpractice as plaintiff's attorney. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Affirmed.

*Dohany & Dohany*, for appellant.

*Thomas A. E. Weadock*, for appellee.

MOORE, C. J. In July, 1897, the plaintiff was the owner of certain real estate, incumbered by a mortgage for $4,200, held by Thomas B. Baulch, of New York, which provided for the payment of semi-annual interest, and that in case the interest, insurance, or taxes were in default for 30 days, the entire sum named in the mortgage might be declared due. During that month plaintiff received a notice from Gray & Gray, attorneys for Mr. Baulch, that there was due on the mortgage as interest, taxes, and insurance the sum of $168. The plaintiff did not have the money with which to pay the amount due. He claims he consulted the defendant, who was then acting as his attorney, concerning the matter. That at this time the plaintiff was indebted to one William Reid in the sum of over $1,300, and Mr. Reid agreed with plaintiff that he would take a second mortgage on the premises for $1,875, $1,300 and over of which was to pay the amount due Mr. Reid, and the balance of $564 was to be paid plaintiff by Mr. Reid. That Mr. Reid had told plaintiff that he could not pay him the $564 in cash, but that he would give him a note for that amount. That the plaintiff told these facts to the defendant, and the defendant agreed that Mr. Reid's note should be made payable to him, and agreed to cash the note, and from the money pay several bills the plaintiff owed, among them the $168. The plaintiff claims that the mortgage and note were given and the note delivered to defendant, but he did not pay the $168 as he agreed. He further claims that on the 30th day of July plaintiff went to a farm in Ontario, and remained there until about the 10th day of August follow-

ing, when he returned to Detroit, and learned that the defendant had not paid the $168 to Gray & Gray, and they had commenced proceedings to foreclose the first mortgage, and defendant had gone on a vacation; that upon defendant's return he went to see Gray & Gray, and tendered them the $168, but they would not accept it unless an additional $25 was paid as an attorney's fee, and six months' interest in advance. He further claims he was unable to raise this sum, and the defendant would not advance it for him, and the property was afterwards sold under foreclosure for $4,987.29 to Thomas B. Baulch, who bid it in; that the market value of the property in the months of July and August, 1897, was $9,700; that during the time foreclosure proceedings were pending the plaintiff tried to raise the money with which to pay the mortgage, or a sufficient part thereof to induce Mr. Baulch to discontinue the suit, but he was unable to do so. The plaintiff brought this suit to recover damages.

Defendant pleaded the general issue, and also filed a plea in abatement to the effect that two years earlier the plaintiff had sued defendant for the same cause of action in a chancery case; that a decree had been rendered therein, from which decree all the parties had appealed to the Supreme Court. The case at bar was tried and is brought here by plaintiff upon writ of error. Later defendant filed a plea in this court that a decree had been rendered in this court in the chancery cause heretofore mentioned decreeing, in effect, a full settlement of all matters between the parties. Plaintiff claims the last-named plea should not be considered by the court.

Upon the trial in the court below plaintiff was sworn in his own behalf, and gave testimony tending to support his claim as we have already stated it. Receipts reading as follows were offered in evidence:

"DETROIT, October 20th, 1898.

"This is to certify that all interest on the Alice Dillon mortgage is paid up to March 2d, 1897; that I am indebted to George W. Radford on notes given by myself to the said

George W. Radford, and now held by him, and all renewals of the same. I am also indebted to the said George W. Radford on a judgment for $362.80, in a case wherein said George W. Radford is plaintiff and Louis C. McBride, Robert D. McBride and myself are defendants. Judgment rendered March 17th, 1898; that there is no set-offs to the above indebtedness.

"EDGAR S. DEAN."

"DETROIT, MICH., June 6, 1899.

"Received of George W. Radford Forty-one dollars in full of all demands to date.

"EDGAR S. DEAN."

Upon the trial counsel for plaintiff stated that the plaintiff was not suing for the money that was put into Mr. Radford's hands; that, as to the sums of money which passed between them, that had been litigated and settled in the chancery case; that the plaintiff claimed in this case damages for Mr. Radford's failure to pay over the $168 as he agreed, which would have prevented the foreclosure case; and that the measure of damages would be the difference between the market value of the real estate and the lien upon it. It was also stated in court by the counsel that the amount claimed by Gray & Gray when Mr. Radford and the plaintiff saw them after the latter's return from Canada was $342. The judge expressed his opinion that the measure of damages would be the difference between $168, the amount claimed to have been left with Mr. Radford, and the amount demanded by Gray & Gray, which would be $174. Counsel for plaintiff then declared, " We do not want to try a lawsuit for $174," and then the following occurred:

"*Mr. Dohany:* We don't want to go ahead here for three or four days or a week and put in evidence over $174 when we will have eventually to have the Supreme Court review that proposition. Cannot we, by a case-made, or by making a stipulation of facts here, end the case here, and have the Supreme Court pass on the question as to whether Mr. Radford is liable?

"*The Court:* You may withdraw that other matter from the case.

"*Mr. Weadock :* That $174 ?

"*Mr. Dohany:* Yes, we will do that, and we don't lose our rights to sue on that.   We withdraw as to the $174.

"*The Court:* Then I can charge the jury, and then he says he can go to the Supreme Court on that question.

"*Mr. Weadock:* No, we want to settle this question right here.

"*The Court:* You cannot help his withdrawing it if he wants to.   You may as well sit down quietly, and take what you cannot help.   I will fix it so that you can get that all right.   (Exception.)"

The plaintiff then gave further testimony tending to show the relationship of attorney and client between himself and Mr. Radford, and that the latter was familiar with his financial situation.   No opportunity was given defendant to put in any testimony, and the court charged the jury that, as it was conceded the $168 had been accounted for by Mr. Radford in another suit, and the sum of $174, which the court was willing the jury should allow as damages, had been withdrawn by counsel for plaintiff, he deemed it his duty to direct a verdict for defendant, and he did so.

In disposing of the case we deem it unnecessary to consider the result in the chancery case between the same parties.   Was the circuit judge right in holding that Mr. Radford should not be liable for the loss of the real estate ?   It has already appeared that the plaintiff agreed in the mortgage to keep the property insured, to pay the taxes, and pay interest every six months, and that in case of default in any of the above particulars the principal and interest might be declared due.   His testimony was to the effect that he had no other way to get the money.   It is not claimed the property was bid in for the benefit of Mr. Radford.   It is not claimed he agreed to pay any other amount than the $168, or to take care of any other amounts which might become due as interest, insurance, or taxes. Can it be said that, if the $168 had been paid, the subsequent installments of interest would be paid as these became due, and there would be no foreclosure ?   It is true

the plaintiff testified he had negotiated for a builder's construction loan, which he believed he could have obtained; but it is apparent from his testimony that there was no good basis for that belief. Can it be said the failure to pay the $168 was the proximate cause of the loss of the real estate? In the case of *Watson* v. *Mead*, 98 Mich. 330, the plaintiff had retained certain farm implements needed to work the farm. In disposing of the case Justice HOOKER, speaking for the court, said:

" We will only add that defendants' theory upon the subject of damages for the detention of property during the pendency of the action is erroneous. A notice accompanied the plea, under which defendants sought to recover damages for the loss of their farm. They claimed that by being deprived of their implements they could not put in any crops; hence they received no money, and could not make payments due on the farm, and they were, in consequence, compelled to deliver up possession, and surrender their contract of purchase, and (to quote) 'lost everything they had on earth.' Without attempting to lay down a rule, we mention this subject to prevent a possible error upon another trial."

See, also, *Carnegie, Phipps & Co.* v. *Holt*, 99 Mich. 606; *Hitchcock* v. *Supreme Tent, Knights of Maccabees*, 100 Mich. 40, and the many cases cited in the footnote, *Taylor* v. *Cooper*, 104 Mich. 72; *Stevens* v. *Yale*, 113 Mich. 680.

Judgment is affirmed.

CARPENTER, McALVAY, BLAIR, and OSTRANDER, JJ., concurred.