### FREDERICK *v.* HILLEBRAND.

1. DAMAGES—CONTRACTS—BREACH OF CONTRACT.

In actions *ex contractu* the party complaining can recover such damages only as are shown to be the natural and proximate consequence of the breach complained of, and not such as arise from circumstances so far out of the ordinary course of nature or human affairs that they could not fairly be presumed to have been anticipated by the parties at the time of the making of the contract.

2. EVIDENCE—ADMISSIBILITY— CONTRACTS — SUPPLEMENTAL AGREEMENTS—EXCHANGE OF PROPERTY.

In an action for breach of a contract for the exchange of land, a supplemental agreement providing that in accordance with the contract, to which it referred, a warranty deed and a certified abstract to plaintiff's premises were tendered, was properly admitted in evidence.

3. EXCHANGE OF PROPERTY—EVIDENCE—PAROL EVIDENCE—ADMISSIBILITY.

It was proper for plaintiff to testify to the actual value of his farm, as he had the right to show that his contract was a valuable one.[1]

---

[1] On admissibility of parol evidence to vary, add to, or alter a written contract, see note in 17 L. R. A. 270.

4. SAME—TITLE TO REAL PROPERTY—ABSTRACTS—INSTRUCTIONS.

In such action the jury should have been instructed on the question whether the title tendered by plaintiff to defendant was or was not a marketable one.

5. REAL PROPERTY—DEFECTIVE TITLE—POWER OF ATTORNEY—ABSTRACTS.

The title to land is defective where the abstract shows a conveyance by husband and wife by another, but no power of attorney, and it is immaterial that the abstract shows acknowledgment by the husband and wife, since such a form is often used by an attorney in fact.

6. SAME—DEFECTIVE TITLE—VENDOR AND PURCHASER—RIGHTS OF VENDEE.

If there is an apparent incumbrance on record a vendee is entitled to a reasonable time for investigation.

7. ABSTRACTS—AFFIDAVITS—CONSTRUCTION.

The construction of an abstract of title and accompanying affidavits is for the court.

Error to Kent; Barton, J., presiding. Submitted October 23, 1917. (Docket No. 45.) Decided December 27, 1917.

Assumpsit by Walter Frederick against William P. Hillebrand for breach of a contract to exchange real property. Judgment for plaintiff. Defendant brings error. Reversed.

*John M. Dunham,* for appellant.

*Thomas A. Lawler* and *John M. Berry,* for appellee.

STONE, J. This is an action of assumpsit to recover damages for the alleged breach of a contract to exchange or trade certain real estate of the respective parties. The plaintiff, on January 22, 1916, was the owner of a 200-acre farm in the township of Essex, Clinton county. The defendant was engaged in the real estate business in the city of Grand Rapids, and was the owner of certain real estate in that city, and his sisters and brother also owned some real estate

there, which the defendant was endeavoring to sell or trade for them, with his own property. All of the property involved was mortgaged. After an examination of all of the properties by the parties to this suit, on said January 22d at the farm, an agreement in writing was made and signed by the plaintiff and his wife of the first part, and the defendant of the second part, in and by which the plaintiff and wife agreed to sell their said farm to the defendant for the sum of $16,000, subject to an incumbrance of $7,000, and to accept in payment thereof the several parcels of real estate in Grand Rapids, subject to certain mortgages therein described. The parties of the first part also agreed to pay the said party of the second part $100 in cash.

The defendant agreed to buy said farm for said sum, subject to said mortgage, and give in payment thereof said Grand Rapids property subject to said mortgages. Each of said parties agreed to furnish an abstract and tax history of their respective properties, and also agreed to meet at the Standard Real Estate Company's office, at Lansing, to close the deal on or before 20 days. Said first party was to have the rent of the Grand Rapids property from said January 22d; possession of the farm was to be given on or before March 15, 1916, and possession of the Grand Rapids property was to be given upon signing final papers. Each of the parties agreed to, and did, deposit with the said real estate company a promissory note of $200 as earnest money. The above contract was made on Saturday. On the following Monday the defendant wrote the plaintiff, evidently with a view of calling the trade "off," and saying:

"I have got into trouble and my party does not care to make the trade since I explained to him about the building, and does not care to make the trade."

On Sunday, the 23d, defendant went to Lansing to

see the real estate company that had been negotiating the trade, for the purpose of ending the deal. On January 25th, plaintiff wrote to the defendant, indicating that he intended to stand by the contract and that to turn the deal down would be $1,000 damage to him. On February 8th following, the plaintiff, with his attorney, went to Grand Rapids, and there, accompanied by another local attorney, visited the defendant, and served upon him a written demand that he perform his contract. After referring to the contract it stated:

"In accordance with said contract, and as therein provided, we herewith tender to you a warranty deed made and executed by Walter Frederick and Margaret A. Frederick of Maple Rapids, parties of the first part, to William P. Hillebrand, party of the second part, covering the premises or farm which was to be conveyed to you under the terms of the foregoing contract. * * * You are further presented with an abstract covering the aforesaid described farm, which said abstract is certified to as of the 24th day of January, 1916, in accordance with the aforesaid contract."

It appeared that at this time the defendant stated that he was unable to close the deal at that time, and the plaintiff, or one of his attorneys, told defendant that if he would admit that a valid and sufficient tender had been made by plaintiff, and would waive further tender, he would extend the time; whereupon the following supplemental agreement was prepared and signed by the parties:

"GRAND RAPIDS, MICHIGAN, February 8, 1916.

"I hereby admit that Walter Frederick has this day made full and complete tender of performance for and in behalf of himself of all covenants and agreements to be performed by him under the terms of a certain contract heretofore entered into by and between W. P. Hillebrand and Walter Frederick and Margaret Frederick, his wife, on January 22, 1916. For and in consideration of Mr. W. P. Hillebrand agreeing to

close the transaction as provided in said contract at Lansing, Michigan, on the 17th day of February, 1916, said Walter Frederick agrees to extend the time of closing said contract to February 17, 1916, without waiving any of his rights in pursuance to said default. Said W. P. Hillebrand hereby waives any further tender by said Walter Frederick. And a failure to complete said transaction on February 17, 1916, shall constitute an immediate default of said contract, without further action on the part of said Walter Frederick.

"Dated at Grand Rapids, Michigan, this 8th day of February, A D. 1916.

[Signed]   "W. P. HILLEBRAND.

"Accepted by
[Signed]   "WALTER FREDERICK."

It was undisputed that the abstract and tax history had never been in defendant's hands until that time.

Defendant sent the plaintiff's agent, the Standard Real Estate Company, the abstracts covering the Grand Rapids properties, and some question was raised regarding them. The defendant had the abstract and tax history of the farm examined, and claimed that he found that a marketable title had not been tendered to him, and that in the subsequent demands of the plaintiff that he perform the contract, it was never shown that the title to the farm had been perfected. The criticisms of the abstract, which was received in evidence at the trial, were (entry No. 7):

"Numan Terry and Eliza Terry, his wife, by Numan Terry, Jr., to Charles W. Carter, dated Nov. 16, 1872, recorded Nov. 23, 1872, L. 54, page 17. Warranty deed, $1,000. S. W. ¼ of N. W. ¼ of sec. 16-8-3, acknowledged by Newman Terry and Eliza Terry, his wife."

"Objection: No power of attorney on abstract."

Also (No. 10):

"Jerome T. Shaw and Nellie M. Shaw, his wife, to Walter Fredericks, dated Feby. 24, 1915, recorded

April 12, 1915, Liber 137, page 408. Warranty deed, $1.00, conveys description abstracted, except 2 mortgages, $7,250, to Isaac Hewitt."

There was, however, but one mortgage on abstract, of $7,000 to Hewitt, except No. 15:

"Niles C. Tabor to Oscar F. Bristol, dated June 23, 1863, recorded Oct. 23, 1863, Liber L, page 2031. Mortgage $1,200. S. W. ¼ sec. 16-8-3."

The above were the principal objections to the title made by defendant.

Quite an extended correspondence between the parties followed, the contents of which we do not deem it necessary to state in detail. On April 10, 1916, this suit was begun by summons, and on April 26th declaration was filed. In his declaration, among other items of damage which he had suffered, were the following:

"That this plaintiff, as a result of the said William P Hillebrand's failure to carry out the covenants and agreements as in such contract contained, has been unable to do with said farm as he otherwise would do; that he has been prevented from cutting wood and timber upon said place; that he expected and intended to erect a barn upon said place, and during the winter months to cut the timber therefor, but that plaintiff, through such neglect and failure of said defendant to carry out his contract as aforesaid, has been prevented from so doing, and has lost large sums of money, which he might otherwise have obtained from the sale of wood and other articles from said farm; that he has been damaged in a large amount by such failure and refusal of said William P. Hillebrand aforesaid, which has prevented him from erecting a barn upon said farm as he had so planned and intended."

The original plea was the general issue only, but at the trial defendant was permitted to amend his plea by adding a notice of special matter. By the notice filed defendant, among other things, alleged that the said agreement of February 8th—

"was procured by and through fraudulent methods and practices of said plaintiff, his agents and attorneys. That Walter Frederick had not at said time made a complete tender of performance, nor has he ever up to the present time made such tender, and that said defendant signed said agreement, relying upon representations made by the plaintiff, his agents, and attorneys, which were untrue, and which were known by said plaintiff to be untrue."

Upon the trial of the case the plaintiff was permitted over the objection of the defendant, to show upon the subject of damages that before making this contract with defendant he had planned to cut and take off and sell a quantity of wood, and also to save a quantity of saw logs from which to make lumber with which to build a barn the coming season in which to store his hay; that the contract with defendant resulted in the plaintiff discharging his men employed to cut the wood and timber, and later was unable to hire others to cut; that if he had not made this contract, he would have finished cutting his wood and timber, which he lost, would have sawed the lumber and would have built a barn; that if he had built the barn he would have had a place to store his hay, which for lack of the barn was lost, by reason of the wet weather. This loss he claimed was the result of the breach of the contract of January 22, 1916, by the defendant. Plaintiff was also permitted to testify as to the value of the farm.

. The court charged the jury in part as follows:

"I charge you, gentlemen, as a proposition of law, that a marketable title is one of such character as to assure to the vendee the peaceful enjoyment of the property. Now, gentlemen, it is a question of fact for you to find in this case whether or not the title as represented by the abstract and tax history in this case, was a marketable title. If at the time of entering into this transaction, or more particularly with reference to the time when there was a tender signed,

in other words, a waiver of further tender so to speak, if at that time they offered a good and sufficient deed conveying a marketable, merchantable title, then the plaintiff has proven his case. If, on the other hand, the defense has shown that its title is not a merchantable title and that there was a misrepresentation, or, in other words, a legal fraud perpetrated upon this defendant, then the plaintiff has failed; in other words, he must fail if that is shown to your satisfaction.

"Now, if there was a legal fraud perpetrated upon this defendant, there was no consideration for the signing of the waiver and the waiver, so to speak, is void, absolutely void, if you find that there was not presented to this defendant on that occasion an abstract showing a merchantable or marketable title, as I have defined it.

"Now, gentlemen, that would be the first thing for you to consider, Was a merchantable title tendered? If you find there was a merchantable title tendered, then, and not until then, will you consider the elements of damage.

"I charge you as a proposition of law that the man who breaches a contract is liable for the damages he occasions thereby. Now, those damages must be consequential. They must be consequential of the breach. The breach, in other words, must be the proximate cause and within the contemplation of the parties.

"Now, gentlemen, if you get to that point, if the plaintiff has proven his case by that preponderance of evidence which I have defined, and it has not been overcome by the evidence of the defendant, then you will consider the elements of damage; and I charge you as elements of damage that I submit for your consideration there has been admitted in evidence here three items, three items only—the wood, testimony in relation to the wood. If you find that the plaintiff has proven his case by that preponderance of evidence in relation to that element of damage, then you will find in his favor upon that element not to exceed the sum of $40. Now as to the hay, another element of damage, if the plaintiff has proven his case by that preponderance in that relation, you will consider the subject of hay, and if you find in his favor, you will find not to exceed $96 for that element of damage. Third,

.as an element of damage, there is evidence in the case in relation to the value of the properties. It is the claim of the plaintiff that the value of the property here which he was receiving was in excess, taking into consideration all the incumbrances, the equities, ·so to speak, the value was in excess of the value of what he was giving in exchange the sum of $800. If you find that he has proven that element of damage by a preponderance of the evidence, as I have defined, you will find in his favor therefor not to exceed the . sum of $800.. Now, gentlemen, the whole sum total that you may be able to find, if you find all that they have proven or all that they claim, is the sum of $936."

The trial resulted in a verdict and judgment for the plaintiff in the sum of $548 damages. There was a motion for a new trial which was denied, and exceptions duly taken by defendant. The defendant has brought error, and by his assignments of error he has raised the following questions:

(1) As to the measure of damages.

(2) Error in admitting in evidence the supplemental contract of February 8th.

(3) Error in permitting plaintiff to testify as to the actual value of the farm.

(4) That the court erred in submitting to the jury as a question of fact whether a marketable title had been tendered by the plaintiff.

1. We are of the opinion that the court erred in receiving evidence of damages by reason of the loss of wood and hay, and in submitting that question to the jury. The correct doctrine is as claimed by defendant's counsel:

"The damage which a party ought to receive in respect to such breach of contract may be said to be such as may fairly and reasonably be considered either as arising naturally—that is, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of a breach of it."

It can hardly be claimed that when these parties made the contract declared upon, either of them contemplated that a breach of it might cause the sap-rotting and loss of certain wood, or the loss of certain hay, under the circumstances as shown by the evidence.

As early as *Clark* v. *Moore,* 3 Mich. 55, this court held that in actions *ex contractu,* the party complaining can recover such damages only as are shown to be the natural and proximate consequence of the breach complained of, and not such as arise from circumstances so far out of the ordinary course of nature, or human affairs, that they could not fairly be presumed to have been anticipated by the parties at the time of making the contract. That case has been followed by many others, among which are the following: *Cuddy* v. *Major,* 12 Mich. 368, and note; *Hopkins* v. *Sanford,* 38 Mich. 611; *Wetmore* v. *Pattison,* 45 Mich. 439 (8 N. W. 67); *McKinnon* v. *McEwan,* 48 Mich. 106 (11 N. W. 828, 42 Am. Rep. 458); *Watson* v. *Mead,* 98 Mich. 330, 337 (57 N. W. 181); *Carnegie, Phipps & Co.* v. *Holt,* 99 Mich. 606 (58 N. W. 623); *Hitchcock* v. *Knights of Maccabees,* 100 Mich. 40 (58 N. W. 640, 43 Am. St. Rep. 423, and note); *Dean* v. *Radford,* 141 Mich. 36 (104 N. W. 329).

2. We do not think that the court erred in admitting in evidence the supplemental contract of February 8th. Whether or not it was obtained by false representations was properly submitted to the jury, and they were instructed that if it was so obtained it was void.

3. In our opinion it was not error to permit plaintiff to testify to the actual value of the farm. He had a right to show that the contract was a valuable one.

"The measure of damages for the breach of a contract by the vendee to buy land is the difference between the contract price, and the fair cash value of

the land at the time of the breach." 3 Elliott on Contracts, § 2160.

4. Whether the title tendered to the defendant was or not a marketable title was in our opinion a legal question upon which the jury should have been instructed. If the agreement of February 8th to waive further tender of title was understood by defendant when signed by him, and was not obtained fraudulently, it was binding on defendant, and the jury should have been so instructed. This presented a question of fact.

There was no agreement in this case that the plaintiff would present a perfect title of record. There was evidence that the provision, "except 2 mortgages of $7,250 to Isaac Hewitt" in the deed of Shaw and wife to the plaintiff, of February 24, 1915, was a mistake, and that it was corrected by a deed of February 16, 1916, of which defendant had notice before suit.

It also appeared by the abstract that Niles C. Tabor never had title to any part of the farm, and that the mortgage (No. 15) to Bristol was a "wild instrument," having no connection with the title. Also that it was discharged by Bristol's sole heirs on March 13, 1916, as appeared by an affidavit of that date, made pursuant to Act No. 123, Pub. Acts 1915 (3 Comp. Laws 1915, § 11736 *et seq.*), which affidavit is made *prima facie* evidence of the facts stated, by said statute.

There is in the record no evidence of authority of Numan Terry, Jr., to execute the deed of Numan Terry and Eliza Terry to Charles W. Carter of date November 23, 1872 (No. 7), and the jury should have been so instructed. The entry appearing on the abstract that the deed was acknowledged by Numan Terry and Eliza Terry, his wife, would not remove the objection. Such form is often used by an attorney in fact. There

was no evidence in the case of any power of attorney or other authority of Numan Terry, Jr., nor of adverse possession sufficient to constitute title. This affected title to 40 acres of the farm and was a material matter. What the deed or the record may show is not before us, and we must be governed by this record.

In *Allen* v. *Atkinson*, 21 Mich. 351, it was held that where one contracts to sell and convey land, and the contract is silent as to the title, it is to be assumed that the title is good; and it devolves on the vendee, if he questions it, to show the defect. But he has an undoubted right to a good title; that the title shall be a marketable one, not open to reasonable objection. But when there is an apparent incumbrance of record the vendee has a right to demand a reasonable time for investigation. See, also, *Curran* v. *Rogers*, 35 Mich. 221; *Dikeman* v. *Arnold*, 71 Mich. 656 (40 N. W. 42); *Todd* v. *McLaughlin*, 125 Mich. 268 (84 N. W. 146); *Weaver* v. *Richards*, 144 Mich. 395 (108 N. W. 382, 6 L. R. A. [N. S.] 855). It was for the court, and not the jury, to construe the abstract of title, and the accompanying affidavits. It is impossible to say what part of the damages awarded by the jury was made up of damages to the wood and hay.

For the errors pointed out above, the judgment of the circuit court is reversed, with costs to the appellant, and a new trial is granted.

KUHN, C. J., and OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.