JACKSON SLEIGH CO. *v.* HOLMES.

1. SALE—BREACH OF WARRANTY—DAMAGES.

The measure of damages for a breach of warranty on the sale of a chattel is ordinarily the difference between the value of the article contracted for and that of the article furnished.

2. SAME—ACTION FOR PRICE—RECOUPMENT—EVIDENCE.

In an action against a retail dealer for the price of certain goods, where defendant claimed recoupment for defects therein, evidence that such defects became generally known, and injured his business, was properly excluded, as the damages sought to be shown were not sufficiently certain to permit a recovery therefor.

3. SAME—CROSS-EXAMINATION.

In an action against a retailer for the price of certain buggies, where defendant claimed that the buggies were defective, and practically worthless, and had testified on direct examination to the profit usually obtained on buggies, cross-examination as to the price for which the buggies in controversy were sold was proper.

4. SAME—INSTRUCTIONS.

In an action for the price of certain buggies, where defendant sought recoupment for defects therein, and plaintiff's testimony tended to show that, on complaint by defendant as to such defects, plaintiff furnished repairs which defendant agreed to accept as satisfaction, an instruction that, if the jury should find that such agreement was made, it displaced the original agreement, and plaintiff was entitled to recover, did not erroneously inject a new issue into the case.

Error to Washtenaw; Kinne, J. Submitted January 9, 1902. Decided January 28, 1902.

*Assumpsit* by the Jackson Sleigh Company against William J. Holmes for goods sold and delivered. From a judgment for plaintiff, defendant brings error. Affirmed.

*A. F. & F. M. Freeman*, for appellant.

*Forrest C. Badgley*, for appellee.

MONTGOMERY, J.   This action was brought on the common counts to recover a balance due on account for buggies and sleighs sold by the plaintiff to the defendant in the year 1898.   Defense, recoupment for defects in the buggies furnished.   Plaintiff recovered, and the defendant brings error.

Three grounds for reversal are urged in this court: *First*, that the court erred in excluding proof of injury to the defendant's business, as furnishing a basis for a measure of damages; *second*, that the court erred in permitting plaintiff's counsel to show by defendant what the buggies purchased by him were resold for; and, *third*, that the court injected a new issue into the case in his charge to the jury.

Defendant introduced evidence tending to show that the buggies furnished by plaintiff to defendant were defective, —particularly that the wheels were of very poor quality; that sales were made in the regular course of his business, with warranties, and that many of these buggies were returned, and new wheels demanded and furnished; and, in addition to this, sought to show that the fact became noised abroad that the buggies which he had sold were defective, and that it damaged his business.   We think, in any view of the case, that the testimony was properly excluded.   The damages sought to be shown were not sufficiently certain to have warranted the court in permitting a recovery upon other than the usual basis of the difference between the value of the article furnished and that which was contracted.   *McKinnon* v. *McEwan*, 48 Mich. 106 (11 N. W. 828, 42 Am. Rep. 458).   If we were more in doubt as to the sufficiency of the showing in this regard, an answer to the defendant's contention would be that, after the complaints began to come in, and knowing of the defects in these buggies, he continued to sell them upon the same warranty as before, evidently relying upon the plaintiff's promise to replace the parts.

As to the second question, the testimony as to the price at which these buggies were sold was elicited from the

witnesses of the defendant by plaintiff's counsel on cross-examination. On the direct examination of defendant this subject was opened up by defendant's counsel. Witness stated, on direct examination:

"We generally calculate to sell a buggy that we purchase for $40 at wholesale at a profit of from $15 to $20. That is the general profit made by dealers. We generally calculate about $15 for selling a buggy. We don't always get it, but we try."

On cross-examination the witness was asked at what price he sold the buggies in question, and it appears that he sold them all at the price of $60 each. It is clear that, in view of his claim that the buggies were practically worthless, this was proper and legitimate cross-examination, and a proper subject of comment to the jury.

The question as to whether a new issue was injected into the case arose in this manner: The plaintiff offered testimony in rebuttal tending to show that the warranty, when made, was a warranty coupled with an agreement to replace. This testimony was coupled with other testimony tending .to show that, after the buggies were all shipped, and after the complaints had come in, defendant visited the plaintiff's place of business at Jackson, and it was then talked over and agreed as to what repairs would be necessary in order to make the transaction satisfactory to him. Plaintiff's testimony also tended to show that it was agreed that, if four sets of wheels and two sets of side curtains were sent him, it would be all right, and be entirely satisfactory; that these repairs were shipped him, and that no further complaint was made. Defendant's testimony upon this subject, upon cross-examination, was as follows:

"Yes, they asked me how many wheels I wanted to take the place of those that were defective, and I think I told him that I wanted four sets and some side curtains, and that that was all that was needed, so far as I knew at that time, to make the buggies good. I don't think I told them that, if they furnished those wheels and side curtains, it would make the matter entirely satisfactory. I

don't remember what I did tell them. Yes, it made it satisfactory at that time; but it ran along, and later on some more of the wheels gave out. I wrote them for four sets more, and I told them what I wanted them for, and got them. Yes, they made the buggies all right then. No, that did not make them satisfactory to my customers. There has never been a man satisfied with the buggies yet. Yes, there is trouble with the second wheels that were put on. They are all going to pieces. Some were used only a little while before they went down. I don't remember whether I ever called the attention of the sleigh company to that matter or not."

The testimony on the part of the plaintiff was distinctly that its attention had never been called to any imperfections in the wheels and repairs sent as substitutes for the parts which had proven defective in the original shipment. The charge of the court complained of was as follows:

"The plaintiff claims that a new arrangement was made by it with the defendant on January 2, 1899, by which the question of defendant's damages was settled and adjusted; that, by the terms of this agreement, the plaintiff was to furnish certain new parts to take the place of the defective ones, and that it did furnish such parts. If you find that such new agreement was made, then, as a matter of law, I instruct you that it was founded upon a sufficient consideration, and would be binding upon the parties; and, if such agreement was carried out, and the parts furnished, the defendant thereby waived any claim which he had for damages at that time, and no part of such claim could be allowed at this time. If a new agreement was made January 2, 1899, as claimed by the plaintiff, the original agreement must not be considered by you; and, if such new agreement was kept and performed by the plaintiff, your verdict must be for the plaintiff for the amount of its claim."

We think that this was not injecting a new issue into the record. The defendant set up recoupment. The plaintiff, to meet this, showed that the alleged breach of warranty had been adjusted between the parties, and that the terms agreed upon had been complied with. If this were so, it was not a new issue. It was a very proper way of meeting the defense urged. The jury could not

have misunderstood this instruction, and the testimony tended very strongly to support the conclusion reached by the jury. It appears pretty clearly that no complaint was made from the 2d of January, 1899, after these repairs were shipped to the defendant, till about the time of the institution of the suit, on the 2d of August of that year.

But one other point is made in the brief of counsel for defendant, and, as counsel concede that this point, standing alone, would not be sufficient for a reversal of the case, it is unnecessary for us to discuss it.

The judgment will be affirmed.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.