## HULER v. NASSER.

1. BILLS AND NOTES—CHECKS—NEGOTIABILITY.

   As between the maker and payee, a check is a negotiable instrument, when possessing the requirements of negotiability as provided by the negotiable instruments law (2 Comp. Laws 1929, §§ 9250, 9434).

2. SAME—NEGOTIABLE INSTRUMENTS—CONSIDERATION—BURDEN OF PROOF.

   Where the execution of check, upon which plaintiff payee based his action, was not denied under oath by defendant maker and check possessed the statutory requirements of negotiability, plaintiff was properly not required to assume burden of proving consideration for the check (2 Comp. Laws 1929, §§ 9250, 9434; Court Rules Nos. 17, § 5; 29 [1945]).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am. Jur., Bills and Notes, § 210.
[2] Burden of proof as to consideration for bill or note when plaintiff not protected as a holder in due course. 35 A.L.R. 1370, supplemented in 65 A.L.R. 904, and in 127 A.L.R. 1003.
[2] Comment note.—Distinction between burden of proof and burden of evidence as related to statutory provisions regarding presumption and burden of proof in respect of commercial paper. 152 A.L.R. 1331.
[2, 3] 8 Am. Jur., Bills and Notes, §§ 1005–1007.
[3] 53 Am. Jur., Trial, § 676.
[4] 46 Am. Jur., Sales, §§ 332, 341.
[5] 46 Am. Jur., Sales, §§ 737–743, 746–747.
[5] Right of dealer against his vendor in case of breach of warranty as to article purchased for resale and resold. 22 A.L.R. 133, supplemented in 64 A.L.R. 883.
[6] 15 Am. Jur., Damages, § 43.
[7] 15 Am. Jur., Damages, § 56.
[8] 15 Am. Jur., Damages, §§ 134, 135, 152.
[8] Loss of profits by boarding house keepers, restaurateur, or hotel keeper as damages for breach of warranty as to food. 79 A.L.R. 982.
[9] 46 Am. Jur., Sales, § 668.
[10] 3 Am. Jur., Appeal and Error, § 1173.
[11] 14 Am. Jur., Costs, § 97.

3. TRIAL—FAILURE OF CONSIDERATION—BURDEN OF PROOF.

The burden of proof that there was a failure of consideration for check was properly imposed upon defendant maker by court's instruction to jury (Court Rule No. 29 [1945]).

4. SALES—FOOD—EXPRESS WARRANTY—IMPLIED WARRANTY.

Where defendant claimed meat he had purchased was expressly warranted as suitable for the restaurant trade, no warranty that the food was legal and wholesome and fit for human consumption would be implied.

5. SAME—DAMAGES—FOOD UNFIT FOR HUMAN CONSUMPTION.

In action by meat packer against purchaser of 105 barrels of frozen ground beef for balance of purchase price, in which defendant set off for various items of damage claimed to have proximately resulted from plaintiff's sale to him of meat unfit for human consumption, no general rule as to damages can be laid down, as each such case must be determined on its own facts.

6. CONTRACTS—BREACH OF CONTRACT.

Where there are no special circumstances to distinguish the contract involved from the great mass of contracts of the same kind, the damages recoverable are such as would naturally and generally result from the breach according to the usual course of things.

7. SAME—SPECIAL CIRCUMSTANCES.

Where there are special circumstances in the contract and its observance would take the contract out of the natural or usual course of things, damages which result in consequence of those special circumstances are recoverable if, and only if, those special circumstances were communicated or known to the party breaching the contract at the time he entered into the contract.

8. SALES—MEAT UNFIT FOR HUMAN CONSUMPTION—DAMAGES.

Damages for loss of profits, loss on sale of store, attorney fees, and damages to personal reputation of purchaser of frozen ground beef are not recoverable by purchaser against meat packer, where meat was condemned as unfit for human consumption, since they were not damages within the contemplation of the parties when the sale was consummated.

9. SAME—MEAT UNFIT FOR HUMAN CONSUMPTION—RECOVERY OF PURCHASE MONEY.

Purchaser of frozen ground beef which was condemned as unfit for human consumption was entitled to recover from the seller the amount paid for such meat as an item of damages within the contemplation of the parties at the time the sale was made.

10. APPEAL AND ERROR—DAMAGES—COSTS.

> Where judgment entered on jury's verdict in action involving sale of meat unfit for human consumption contains amounts in excess of that recoverable under a breach-of-warranty action and includes damages pertaining to matters not the proximate result of the sale of such meat, the judgment is conditionally reduced to the amount paid for worthless meat, with costs of lower court.

11. COSTS—REDUCTION OF JUDGMENT AGAINST APPELLANT.

> Costs on appeal are awarded to appellant meat packer where he secures reduction in judgment against him from $6,312.55 to $1,312.55 since he has prevailed in part on appeal.

Appeal from Ingham; Eger (Paul G.), J. Submitted April 14, 1948. (Docket No. 44, Calendar No. 43,826.) Decided September 8, 1948. Rehearing denied November 12, 1948.

Assumpsit by Robert Huler, doing business as Huler Beef Company, against Benny Nasser, doing business as A. B. M. Market, on check. Set-off by defendant against plaintiffs for damages to reputation, loss of profits, attorney fees and cost of meat. Verdict and judgment for defendant on set-off. Plaintiff appeals. Judgment for defendant ordered in a lesser amount.

*John L. Potter,* for plaintiff.

*Paul Watzel,* for defendant.

BUSHNELL, C. J. This case involves the sale of frozen ground beef by plaintiff Robert Huler, who operates a meat packing plant in the city of Detroit under the name of Huler Beef Company, to defendant Benny Nasser, doing business as A.B.M. Market, in the city of Lansing.

In the early part of 1945, when the supply was scarce, Nasser purchased from Huler several shipments of carcass beef and was told that if he came to Detroit he could purchase more of this meat. On

March 15th, Nasser went to Detroit, having arranged for a truck to meet him at Huler's place of business, but when he arrived he was informed that no more carcass beef was available as Huler had sold all of it to the Government. Huler suggested that he purchase instead some frozen ground beef which was packed in barrels and suitable for the restaurant trade. The parties do not agree on the facts, defendant claiming that he did not inspect this meat while plaintiff claims two barrels of it were delivered for the purpose of ascertaining whether it was suitable for restaurant use. In any event, this frozen meat was billed to the defendant as "10 barrels of ground meat, heart, tongue and cheek, 3,151 pounds."

On March 19th, 15 more barrels were shipped; on March 23d, 30 barrels; and on March 27th, 50 barrels. On March 23d, Gordon Granger, inspector for the dairy and marketing enforcement division of the State department of agriculture, while on routine inspection, noticed the frozen meat in Nasser's market. In the conversation which ensued, Granger was informed that the meat was to be sold as "hamburg," and he told Nasser that it could not be used as such because it contained "nonskeletal" meat. Granger inquired as to the source of Nasser's supply, and obtained samples which were later tested at the State food laboratory. Dr. H. H. Ruhland, who made a pathological examination of the samples, testified in part as follows:

"My examination disclosed that the meat contained part lips, salivary glands, fat, tongue, paper and dirt. It is reported here tongue, salivary glands, lips, snouts, hair and dirt.  *  *  *  By salivary glands I mean glands from the inside of the neck, underneath the tongue, inside of cheek. By skeletal meat I mean meat that is from the skeleton. Sample B–4492 contained lips, salivary glands, hair and

some dirt and regurgitated food and that sample shows there was some hair and lips and salivary glands. By regurgitated food I mean food that had been in the stomach or the intestines of the cow and brought back up for chewing."

When Granger obtained the samples of meat he instructed Nasser to discontinue its sale. Nasser immediately called Huler and told him the meat was being questioned, and Huler replied, not to worry that the meat was inspected and was good. Nasser then arranged for another shipment, which he later attempted to cancel. On March 27th, while at Huler's plant, a final statement of Nasser's account was made and Nasser gave his check in payment thereof in the sum of $4,548.20. He had previously given Huler checks for $535.67 and $1,000.

On March 29th, a seizure order was served on Nasser, who then attempted to stop payment on the $4,548.20 and $1,000 checks, but he was only successful as to the former. Nasser was prosecuted for having illegal meat products in his possession, was convicted, paid a fine of $500, and served a 90-day sentence. Because of the publicity given his trial, Nasser's business fell off and his beer, wine and liquor licenses were revoked. Later, the beer and wine licenses were reinstated. Nasser thereafter sold his business and moved to Denver, Colorado.

On October 16, 1945, Huler brought suit against Nasser for the amount of the check on which payment had been stopped. Defendant set up the affirmative defenses of fraud, misrepresentation, failure of consideration, and breach of warranty, claiming that the meat in question was unfit for human consumption. He also claimed judgment by way of a counterclaim as follows: Loss of profits, $5,000; loss on sale of store, $2,000; money paid plaintiff on March 27th for worthless meat, $1,000; attorney fees incurred in connection with liquor control com-

mission and office of price administration matters, $2,000; damages to defendant's reputation, $5,000.

Trial before a jury resulted in a verdict for defendant in the amount of $6,312.55, and of no cause of action for plaintiff. A motion for a new trial was denied and plaintiff has appealed.

Defendant Nasser sought damages against plaintiff Huler by affirmatively pleading set-off and recoupment, which, in effect, amounts to a cross-declaration. In connection with his claim he subsequently amended his bill of particulars, which originally read in part: "Paid Plaintiff, March 27, 1945, for worthless meat, $1,000," to read "$1,312.55."

Huler declared solely on a negotiable instrument, *i.e.*, a check, copy of which was attached to his declaration. In accordance with Court Rule No. 17, § 5 (1945), the execution of this check not having been denied under oath by Nasser (Court Rule No. 29 [1945]), plaintiff at the trial stood upon the written instrument without offering any testimony, and Nasser assumed the burden of proof on his cross-declaration. As between the maker and payee, a check is a negotiable instrument (2 Comp. Laws 1929, § 9434 [Stat. Ann. § 19.227]), when possessing the requirements of negotiability as provided by 2 Comp. Laws 1929, § 9250 (Stat. Ann. § 19.43); *East Lansing State Bank* v. *Keil,* 213 Mich. 17. The check in question possesses the statutory requirements of negotiability.

Plaintiff claims that the trial court placed the burden upon him to prove consideration of this check. However, an examination of the court's charge shows that this contention is incorrect.

Defendant's cross-declaration is based upon plaintiff's representation that the meat in question was "suitable for the restaurant trade." Defendant in his notice of set-off and recoupment claimed a breach of this warranty and that consequently

there was a complete failure of consideration for the check. On the issue so stated the court properly instructed the jury that the burden of proof was upon the defendant.

There is nothing in defendant's answer, affirmative defenses, notice of set-off and recoupment or bill of particulars to indicate that he had at any time relied upon an implied warranty. Nor does plaintiff make any claim of this nature. His brief states:

"Furthermore, appellant contends that whether there was a warranty or not is unimportant to the decision of this case."

And his reply brief reiterates this statement in the following language:

"Plaintiff and appellant is at a loss as to why counsel for defendant devotes so much space in his brief to the question of implied warranties. The question of whether there were any warranties implied in the transaction is immaterial on this appeal. The trial judge, in clear and unmistakable words, charged the jury that 'There is no implied warranty but the question is, was there an express warranty?'
* * *

"The law is so well settled to the effect that the jury is presumed to follow the charge of the court, whether erroneous or not, that it leaves little room for argument. Under the charge of the trial court, it was impossible for the jury to base its verdict upon anything but an alleged express warranty, claimed by the defendant."

Defendant suggests that it is desirable that:

"The Court, in the instant case, should clarify the conflicting theories and decisions in respect to transactions between dealers. It should hold that, where food products are concerned, there is an implied warranty to the retailer that the product is legal and wholesome and fit for human consumption."

Any statement to this effect in the face of an issue of express warranty would be dictum.

Defendant seeks recovery, however, not only for this kind of damage, but for more, and the question is whether the damages which defendant claims are all the direct and proximate result of plaintiff's sale to him of meat unfit for human consumption. No general rule can be laid down and each such case must be determined on its own facts.

In 15 Am. Jur., Damages, § 52, p. 454, citing various authorities, the rule is stated as follows:

"It has been said that *Hadley* v. *Baxendale* (9 Exch. 341, 156 Eng. Rep. 145, 5 Eng. Rul. Cas. 502) lays down two rules: (1) Where there are no special circumstances to distinguish the contract involved from the great mass of contracts of the same kind, the damages recoverable are such as would naturally and generally result from the breach according to the usual course of things, and (2) where there are special circumstances in the contract and its observance would take the contract out of the natural or usual course of things, damages which result in consequence of those special circumstances are recoverable if, and only if, those special circumstances were communicated or known to the party breaching the contract at the time he entered into the contract."

So tested, defendant's claim for damages for loss of profits, loss on the sale of his store, attorney fees, and damages to his personal reputation are not recoverable in the instant case, since they were not damages within the contemplation of the parties when the sale of the frozen meat was consummated. Defendant, however, should recover moneys paid for such meat, which, according to his testimony, amounted to $1,312.55. See *McKinnon* v. *McEwan*, 48 Mich. 106 (42 Am. Rep. 458); *Copas* v. *Anglo-*

*American Provision Co.,* 73 Mich. 541; and *Jackson Sleigh Co.* v. *Holmes,* 129 Mich. 370.

Plaintiff further contends that defendant, in availing himself of the remedy of rescission, cannot maintain an action for damages for breach of warranty. The action in question is not that of rescission but is a defense asserted to the action brought by plaintiff, and a counterclaim for damages said to have been suffered by reason of a breach of warranty.

The judgment entered upon the jury's verdict contains amounts in excess of that recoverable under a breach of warranty action and includes damages pertaining to matters which are not the proximate result of the sale of meat not fit for human consumption.

If defendant will file in the cause a consent to a remittitur within 60 days so as to reduce the judgment to $1,312.55 the judgment as so reduced will stand, otherwise a new trial is ordered. Defendant may tax costs of the trial court but plaintiff having prevailed in part on this appeal, costs in this Court are awarded him.

SHARPE, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.