**SEIDEL, GONDA & GOLDHAMMER, P.C.**

v.

**MASTER DATA CENTER, INC.**

**Civ. A. No. 77–1136.**

United States District Court,
E. D. Pennsylvania.

Aug. 3, 1977.

James A. Drobile, Ira P. Tiger, James D. Fornari, Philadelphia, Pa., for plaintiff.

Arthur H. Rainey, Philadelphia, Pa., for defendant.

## MEMORANDUM

GORBEY, District Judge.

This is an action arising out of a contract between plaintiff, a Philadelphia law firm specializing in patent and trademark law, and defendant, a computer service company. Jurisdiction is based upon diversity of citizenship and the amount in controversy is alleged to exceed $10,000 exclusive of interest and costs, as provided in 28 U.S.C. § 1332.

Plaintiff alleges that on April 2, 1977, it and defendant entered into a written contract in which defendant agreed to perform various computer services including the payment of certain taxes and annuities to foreign governments with respect to four specified patents issued by Japan to plaintiff's clients, Sonobond and Christiana Metals Company. Defendant failed to pay annuities with respect to the aforementioned patents as a consequence of which they lapsed. As could be expected plaintiff's clients made claim against it for loss of said patents, and the claim was settled by the payment of $150,000. Plaintiff seeks to recover all or part of that amount in this action.

Pursuant to Rule 12(b) Fed.R.Civ.Proc., defendant has moved to dismiss the complaint for lack of jurisdiction on the ground that the amount in controversy does not exceed $10,000, exclusive of interest and costs. Defendant places its reliance for this contention upon the following contractual provision:

"7. LIMITATION OF LIABILITY

In no event shall MDC be liable to PURCHASER [Seidel] for loss of profits or other economic loss, indirect, special or consequential or other similar damages, upon the breach of any obligation arising out of the Agreement except:

A. MDC agrees that it and its employees will exercise all reasonable efforts to insure the accuracy and completeness of data entered into PURCHASER'S computer file as well as any computer reports and patent maintenance payments made and will correct at no cost to PURCHASER any computer file or reports having errors therein if such errors are the fault of MDC, will make any late payment fines, or costs, or take any other reasonable steps necessary to minimize the consequences of such errors.

B. While MDC will use all reasonable efforts to eliminate and correct errors originating in PURCHASER'S records prior to entry into PURCHASER'S computer file including passing all information through computer validation routines, no liability is assumed by MDC for such errors except to make such changes at normal charges where notified by PURCHASER of such errors."

"The rule governing dismissal for want of jurisdiction in cases brought in the federal courts is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *Ostrow Pharmacies, Inc. v. Beal*, 394 F.Supp. 22 (E.D.Pa.1975), *affirmed*, 527 F.2d 645 (3d Cir. 1976).

Defendant argues that "The Agreement between plaintiff and MDC plainly limits the damages which can be recovered for '. . . breach of any obligation arising out of the Agreement . : .' Specifically, plaintiff has agreed that 'in no event'

will it look to MDC for indirect, special or consequential damages."

Defendant insists that plaintiff's damages are consequential, being damages which do not flow directly and immediately from the act of the party, but only from some of the consequences or results of such an act. This, because according to defendant:

> "Clearly, the only direct and immediate result of the alleged breach of MDC's obligation was that the annuities were not paid on the Japanese patents. The other events described in the Complaint were, if anything, indirect or remote consequences. Thus, the alleged irrevocable loss of the patents was at best a direct consequence not of the breach but of the results of the breach, i. e. the nonpayment of the annuities (acting in conjunction with the Japanese patent laws); and the Sonobond-Christiana claim along with the alleged settlement payment of $150,000, which plaintiff seeks to recover here, was at most a consequence of the loss of the patents. It is apparent, therefore, that the damages claimed by plaintiff in this lawsuit are 'consequential' because they did not flow directly and immediately from the alleged breach but rather from the consequences (or more precisely, the consequences of the consequences) of the alleged breach." (Defendant's Memorandum pp. 5, 6)

The first sentence of the preceding paragraph is a succinct statement of defendant's position: "Clearly, the only direct and immediate result of the alleged breach of MDC's obligation was that the annuities were not paid on the Japanese patents." Since the alleged breach, according to plaintiff's complaint, was nonpayment of the annuities on the Japanese patents, what the defendant is saying in effect is: Clearly, the only direct and immediate result of the "nonpayment of the annuities" was that the annuities were not paid.

Plaintiff's interpretation of the contract is entirely different. Noting a substantial difference between a *breach* of contract and the *results* of the breach, plaintiff insists that nonpayment of the annuities on the Japanese patents was the *breach*, and that the direct and immediate *results* of that breach were (1) the irrevocable loss of the patents, and (2) imposition upon plaintiff of legal liability to its clients for that loss.

If such interpretation should prevail in a trial on the merits, and it be determined that the results were foreseeable, recovery of the total amount sued for would be a reasonable possibility. *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng.Reprint 145 (1854); Restatement, Contracts, Sec. 330; *Huler v. Nasser*, 322 Mich. 1, 33 N.W.2d 637. The contract provides that Michigan law governs. (Exhibit A, p. 7, Defendant's Memorandum in Support of its Motion) It follows, therefore, that defendant's motion must be denied.