LAWRENCE v WILL DARRAH & ASSOCIATES, INC

Docket No. 94885. Argued November 2, 1993 (Calendar No. 4). Decided April 19, 1994. Rehearing denied *post,* 1205.

Benjamin P. Lawrence brought an action in the Macomb Circuit Court against Will Darrah & Associates, Inc., and Lucy J. Barker, commercial insurers of his over-the-road tractor-trailer, seeking monies under his policy as a result of its theft, and consequential damages in the form of lost profits caused by the defendants' failure to timely pay his claim. The court, Robert J. Chrzanowski, J., entered judgment on a jury verdict for the plaintiff. The Court of Appeals, DOCTOROFF, C.J., and MICHAEL J. KELLY and BRENNAN, JJ., reversed in part, holding that the trial court erred in denying a directed verdict for the defendants because there was insufficient evidence to create a factual issue regarding whether lost profits were foreseeable when the policy was issued (Docket No. 123790). The plaintiff appeals.

In an opinion by Justice BOYLE, joined by Chief Justice CAVANAGH, and Justices BRICKLEY, RILEY, and MALLETT, the Supreme Court *held:*

The plaintiff presented sufficient evidence that the parties knew or had reason to know that lost profits would occur if the defendants breached the contract.

1. Damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made, i.e., damages the parties knew or had reason to know about. Michigan law embodies a flexible approach to determining the foreseeability of contract damages. Thus, lost profits are recoverable for breach of an insurance contract if they were in the contemplation of the parties at the time the contract was formed.

2. In this case, the plaintiff submitted enough evidence of the element of foreseeability to make out a prima facie case for lost profits. When combined with the nature of the underlying transaction, the evidence was sufficient to allow a jury to infer that at the time the parties entered into the contract, the

defendants reasonably knew or should have known that in the event of breach the plaintiff would lose profits.

Reversed and remanded.

Justice LEVIN, joined by Justice GRIFFIN, dissenting, stated that MCL 500.2006(3), (4); MSA 24.12006(3), (4) provides that an insurance claim is deemed to be paid timely if paid within sixty days of the receipt by the insurer of proof of loss. In this case, it appears that the insurer offered to pay the value of the insured's tractor-trailer within the sixty-day period, and that the insured declined the offer, seeking in addition compensation for lost wages, mental anguish, and other expenses. It cannot properly be said that the insurer acted unreasonably in declining to pay the value of the tractor-trailer unless the insured waived his other claims. The claim for mental anguish clearly was barred by case law and neither the statute nor case law provided for consequential damages for a delay in payment to an insured by an insurer.

Whatever may be the correct resolution of the conflicting views regarding the recovery of lost profits for delay in payment of an insurance claim, the judgment entered by the circuit court for lost profits over a five and one-half-year period is problematic under the circumstances that payment by the insurer would have been timely as late as the latter part of October, 1982, and Lawrence delayed three years in commencing this action, and another three and one-half years in filing a motion for partial summary disposition.

The facts of this case underscore that the Supreme ·Court should adhere to the tendency of its earlier decisions, the decision of the Court of Appeals in the instant case, and the result in another Court of Appeals case denying recovery for consequential damages for delay by an insurer in payment to an insured of an insurance claim. This is not the case to let the camel get his nose under the tent.

194 Mich App 635; 487 NW2d 820 (1992) reversed.

*Hay & O'Rourke, P.C.* (by *Timothy A. O'Rourke*), for the plaintiff.

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana*), for the defendants.

BOYLE, J. The present action involves a suit by plaintiff, Benjamin P. Lawrence, filed against defendants, Will Darrah & Associates, Inc., and Lucy

Jane Barker, to collect monies recoverable under an insurance policy and for consequential damages in the form of lost profits caused by defendants' failure to timely pay plaintiff's claim. The plaintiff obtained a $70,800 judgment in the trial court and the defendants appealed. The Court of Appeals reversed in part,[1] holding that the trial court erred in denying the defendants' motion for a directed verdict because there was insufficient evidence "to create a factual issue regarding whether lost profits were foreseeable when the policy was issued." 194 Mich App 635; 487 NW2d 820 (1992). The plaintiff appealed. We granted leave to decide "whether the Court of Appeals erred in reversing the jury award for lost profits." 442 Mich 938 (1993). Under the circumstances of this case the trial court did not err in denying the defendants' motion for a directed verdict. We reverse the decision of the Court of Appeals and remand the case to the circuit court for a recalculation of the interest due.

I

In November, 1981, the plaintiff purchased an over-the-road tractor-trailer. At the time of purchase, he obtained an insurance policy covering theft through Fawcett & Associates, Inc., with Will Darrah & Associates, Inc., the managing general agent for Lloyd's of London, as the insurers. The policy notes on its front page that the vehicle will be used for commercial purposes and that the plaintiff's occupation is hauling dry freight. The policy covered only one truck, and the plaintiff personally was named as the insured. The plaintiff used the tractor to haul freight from November,

---

[1] The propriety of the Court of Appeals decision on the trial court's interest calculation is not before this Court.

1981, until January, 1982, when it was stolen. The plaintiff reported the theft to the police and called Fawcett & Associates, Inc., who promptly reported the theft to the defendants.

For reasons that remain largely unknown, the defendants delayed in settling under the policy.[2] When the defendants' adjuster finally offered the plaintiff a settlement, it was only under the condi-

---

[2] The defendant waived any arguments relating to the proof of loss and its timeliness by not pleading this defense, "specifically and with particularity" as required by MCR 2.112(D)(2)(b), previously GCR 1963, 112.3. See *O'Neill v Northern Assurance Co of London, England*, 155 Mich 564, 566; 119 NW 911 (1909) (proof of loss defenses were not open to the defendant because it gave no notice of them in its pleadings); *Hare v Workingmen's Mutual Protective Ass'n*, 151 Mich 225, 227; 114 NW 1009 (1908) (the defendant's failure to specially plead a proof of loss defense foreclosed its use). Moreover, the defendant failed to appeal the trial court's ruling on this issue to the Court of Appeals, waiving it before this Court, *Butcher v Treasury Dep't*, 425 Mich 262, 276; 389 NW2d 412 (1986). Finally, the defendant's failure to brief this issue before this Court (defendant noted it only in a footnote and then stated that it is irrelevant), may also be construed as a waiver; "[f]ailure to brief a question on appeal is tantamount to abandoning it." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). The defendant waived the proof of loss claim in the trial court, the Court of Appeals, and this Court. The dissent's six pages on the subject do not change this fact.

Even if the defendant had preserved a proof of loss claim, the statutory underpinnings of its timeliness arguments are questionable. The dissent notes correctly that MCL 500.2006(3); MSA 24.12006(3) provides that an insurance payment made within sixty days of submission of a proof of loss is timely. However, the sixty-day requirement, found in the second and third sentences of § 3, is preceded by a thirty-day time requirement found in the first sentence of § 3. The requirement provides that the "insurer shall specify in writing the materials which constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days." There is no evidence that the defendant ever met the thirty-day requirement. Although exact dates are not clear, the defendant's trial brief states that "[t]hree months after the truck was stolen, the plaintiff's attorney, Mr. Zelenoch, wrote a letter to defendants requesting a Proof of Loss for purposes of concluding the claim. The Proof of Loss was forwarded to the plaintiff's attorney on May 1, 1982." Even if the defendants had made the dissent's statutory argument, and they did not, the failure of the insurer to meet the thirty-day requirement found in § 3 would most likely have precluded a ruling in its favor.

tion that the plaintiff waive all future claims.[3]
Consequently, the plaintiff did not receive recompense until a settlement was reached on the eve of trial.[4] Defense counsel conceded during oral argument that defendants do not here challenge the jury's determination that the contract was breached or the amount of lost profits that the plaintiff claimed. Thus, the narrow issue before the Court is whether the trial court erred when it denied defendants' request for a directed verdict.

II

The defendants' argument in essence, is that the commercial nature of this transaction was not in itself sufficient to put the parties on notice that the plaintiff would suffer lost profits. Defendants contend that the measure of damages for breach of a contract to pay money is the contract price plus interest, absent evidence that the parties contemplated other damages at the time they entered into the contract. From this premise, defendants conclude that plaintiff's failure to introduce testimony that he was unable to replace the vehicle when the defendants breached the contract defeats his prima facie case. It is with this final assertion that we disagree.

[3] The dissent's assertion that "[i]t could not properly be said that the insurer acted unreasonably in declining to pay the $19,250 unless Lawrence waived his claim for 'down time' . . . ," is troublesome because it seems to approve of business tactics which are at best, heavy handed. *Post* at 17. Additionally, the "reasonableness" of the defendant's failure to pay the $19,250 is not before this Court. At trial, the defendant agreed to a jury instruction which stated that "[i]nsurance companies are required to promptly pay any amounts which are known to be due under the policy even if the insured intends to bring an action against the insurance company for other claims . . . ." Moreover, at oral argument, the defendant admitted that it does not challenge the determination that it breached the contract.

[4] The money for the truck did not change hands until after the trial.

A

The controlling case in this area is *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980). *Kewin* involved a breach of contract suit. The plaintiff sought damages arising out of the nonpayment of benefits under a disability income protection policy. The alleged damages included mental anguish and exemplary (punitive) damages. After reviewing Michigan law on the matter, we held that neither the mental distress[5] nor exemplary damages[6] were recoverable under the circumstances presented.

We acknowledged the rule of *Hadley v Baxendale,* 9 Exch 341; 156 Eng Rep 145 (1854), and its usual application to the commercial contract setting:

> [T]he damages recoverable for breach of contract are those that arise naturally from the breach or those that were in contemplation of the parties at the time the contract was made. 5 Corbin, Contracts, § 1007. Application of this principle in the commercial contract situation generally results in a limitation of damages to the monetary value of the contract had the breaching party fully performed under it. [409 Mich 414-415.]

---

[5] [W]e hold that a disability income protection insurance policy contract is a commercial contract, the mere breach of which does not give rise to a right to recover damages for mental distress. The damages recoverable are those damages that arise naturally from the breach, or which can reasonably be said to have been in contemplation of the parties at the time the contract was made. Absent proof of such contemplation, the damages recoverable do not include compensation for mental anguish. [*Id.* at 419.]

[6] [A]bsent allegation and proof of tortious conduct existing independent of the breach, exemplary damages may not be awarded in common-law actions brought for breach of a commercial contract. [*Id.* at 420-421. Citation omitted.]

However, we also noted that the general rule limiting damages for breach of a commercial contract had been held inapplicable where there was evidence that the parties contemplated the damages.[7]

*Miholevich v Mid-West Mutual Auto Ins Co*, 261 Mich 495; 246 NW 202 (1933), was such a case. This Court began by reaffirming the general rule stated in *Clark v Craig*, 29 Mich 397, 402 (1874), that "[f]or any mere delay in payment, interest is in law regarded as a sufficient compensation." The Court noted, however, that this rule is not absolute:

> The damages claimed by plaintiff are for a breach of defendant's contract to pay the judgment. In *Frederick v Hillebrand*, 199 Mich 333, 341 [165 NW 810 (1917)], in which damages were claimed for a breach of contract, it was said:
> "The damage which a party ought to receive in respect to such breach of contract may be said to be such as may fairly and reasonably be considered either as arising naturally—that is, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of a breach of it."
> The rule thus stated is in accord with that laid down in the English case of *Hadley v Baxendale*, 9 Exch 341 (156 Eng Repr 145; 23 LJ Exch 179; 18 Jur 358; 5 Eng Rul Cas 502) [1854], and has been followed quite generally by all the courts in this country. (See citations in footnote in 8 RCL [Damages, § 25], p 455 *et seq.*) Let us apply it to the facts in this case. The plaintiff was a man without

---

[7] Our refusal in *Kewin* to recognize a broad right to recover mental distress and exemplary damages for breach of a commercial contract was not meant to "take away any traditional contract remedies in an insurance contract case." *Royal College Shop, Inc v Northern Ins Co of NY*, 895 F2d 670, 678 (CA 10, 1990).

means. He owned an automobile, and was aware of the fact that a judgment might at some time be recovered against him for his negligence in driving it. It must be presumed that he knew that, if he did not pay such judgment, a body execution might issue against him. To protect himself from this liability he sought and secured the policy in question. The defendant must also be presumed to have known that, in case of plaintiff's default in payment, his arrest might follow. Must it not then be reasonably supposed that the liability to arrest to which plaintiff was exposed was in the contemplation of these parties at the time the contract was entered into? While there are many cases in which this rule of law has been so applied, we find none involving the question here presented.

The wilful neglect of the defendant to pay the judgment was not due to an oversight on its part. It resulted in the imprisonment of plaintiff, with the shame and mortification as well as loss of time incident thereto. A reasonable interpretation of the contract and the application of the law thereto justified the award of damages by the trial court. [261 Mich 498-499.]

The *Miholevich* analysis illustrates how in a given case an application of *Hadley* can allow for more than interest damages.[8]

---

[8] While in *Kewin* we distinguished *Miholevich* on the basis that it involved an insurer's failure to pay a third party under a liability contract, we do not read *Kewin* to preclude lost profit damages for breach of an indemnity contract. Rather, the *Kewin* Court was seemingly acknowledging that the liability nature of the contract in *Miholevich* made the damages suffered by the plaintiff more foreseeable under the *Hadley* test. A similar distinction has been drawn with regard to lost profits stemming from "collateral" transactions in which some courts have employed more rigorous formulations of lack of foreseeability and absence of proximate cause as reasons to deny recovery. In *Mohr v Dix Mutual Co Fire Ins Co*, 143 Ill App 3d 989, 997; 493 NE2d 638 (1986), the Illinois Court of Appeals noted:

When profits which are sought arise out of the breached contract, profits are considered an element of the contract and are presumed to have been within the contemplation of the

*Alderton v Williams,* 139 Mich 296, 300; 102 NW 753 (1905), a case relied upon by the defendants and referred to in *Miholevich,* also found the general limitation on damages recoverable for a failure to pay inappropriate under the facts of a given case. In that case, the defendant argued

> [t]hat the measure of damages where one fails to advance money as agreed is the excess in interest which the borrower is compelled to pay to procure the money elsewhere. . . . In such cases the law presumes that the borrower can obtain money elsewhere, and the increased rate of interest therefore furnishes full compensation for his damages. [*Alderton, supra* at 300.]

The *Alderton* Court noted that this general limitation on damages only applies "where the defaulting party failed to advance money which he had

parties. However, as in the instant case, where the profits sought arise out of a collateral transaction, the plaintiff must establish the damages with reasonable certainty and also show lost profits were within the contemplation of the parties at the time they entered the agreement.

Defendants have not specifically urged the collateral transaction formulation or asked us to adopt a rule of subjective foreseeability. We note, however, that one commentator has observed that lost profit damages should be awarded on proof of actual or constructive knowledge.

> The collateral transaction rule has vitality, but more as a principle of proximate cause than as an aspect of *Hadley v Baxendale.* The courts properly see that liability for the consequences of a breach of contract must be cut off somewhere. A strict test of actual knowledge of the collateral transaction . . . goes too far, however. . . . A reasonable test would require plaintiff to show only that defendant knew or should have known, from the nature of the transaction, that plaintiff would enter collateral transactions based upon it of the type actually entered. If this was foreseeable, then it is reasonable to hold defendant liable for plaintiff's losses. [Dunn, Recovery of Damage for Lost Profits (3d ed), § 1.17, pp 48-49. See also *Royal College Shop v Northern Ins Co of NY,* n 7 *supra* at 678, 679.]

promised to *loan." Id.* at 300 (emphasis in original). The *Alderton* Court went on to hold:

> Those cases [limiting interest to damages] and the principle underlying them have no application to the case at bar. Here plaintiff defaulted, not in making an agreed loan, but in contributing to a joint adventure. Even if defendants had the right to do so, it cannot be presumed that they could have obtained such a contribution from some other source. [*Id.* at 300-301.]

*Alderton* is valuable not because it limits commercial contract damages to cases involving "loans." *Kewin* does not so limit its holding. Rather, *Alderton* indicates that the rule limiting damages to interest in cases involving commercial contracts is not an inflexible bar to consequential damages. Instead, the rule is to be sensibly applied where the justifications for application, namely, that the parties did not contemplate the additional damages, are present. The federal courts, interpreting Michigan law, have recognized this approach.

In *Salamey v Aetna Casualty & Surety Co,* 741 F2d 874 (CA 6, 1984), a diversity action, the United States Court of Appeals[9] recognized that under the circumstances of a given case, lost profits are recoverable under Michigan law for breach of an insurance contract:

> [The defendant] argues that the trial court erred in allowing the jury to award as damages compensation for lost profits beyond the two and a half months required for rebuilding. [The defendant] urges that the business interruption clause should be enforced according to its terms, which limit the

[9] A per curiam opinion joined by Judges Kennedy, Celebrezze, and Neese.

recovery to income lost during the period theoretically required for rebuilding the premises. [*Id.* at 876-877.]

That court rejected the defendant's assertions. It began by noting:

This claim for lost profits is separate from the claims to enforce the insurance contract. "The policy limits restrict the amount the insurer may have to pay in the performance of the contract, not the damages that are recoverable for its breach." . . . Salamey here is seeking to collect damages for losses occasioned by Aetna's breach of contract in failing to pay Salamey's claim under the policy. The business interruption clause is thus irrelevant to the measure of damages for breach of contract. [*Id.* at 877.]

Regarding the defendants' second claim, the court recognized Michigan follows *Hadley v Baxendale* and held that a review of Michigan law demonstrated that consequential damages could be recovered if they were in the contemplation of the parties at the time the contract is formed.[10] Applying this standard to the circumstances of the case before it, the court allowed consequential damages:

[T]he instant case involves only one enterprise, the convenience store in Bay City. Since Aetna did not argue that Salamey failed to mitigate his damages, the jury was entitled to conclude that his inability to rebuild and reopen the store resulted naturally and directly from Aetna's refusal to pay benefits for the fire loss. Accordingly, Salamey may recover lost profits from the store as conse-

---

· [10] The *Salamey* court relying on *Parmet Homes, Inc v Republic Ins Co*, 111 Mich App 140; 314 NW2d 453 (1981), as well as other Michigan precedent, concluded that this Court would allow "compensation for lost profits that were the natural and usual consequence of a breach of an insurance contract." *Salamey, supra* at 878, n 1.

quential damages for the breach of this insurance contract. [*Salamey* at 877.]

B

While this brief survey of Michigan law is not exhaustive,[11] it reveals a flexible approach when determining the foreseeability of contract damages.[12] Defendants' assertion that Michigan applies the objective standard of foreseeability is consistent with this flexible approach.[13] It is with the

---

[11] The dissent's reliance on *Kassab v Michigan Basic Property Ins Ass'n*, 441 Mich 433; 491 NW2d 545 (1992), is misplaced. The primary question in *Kassab* was the applicability of the Michigan Civil Rights Act to insurance claims processing. The Court held that the operative section of the act applied only to insurance access, not to the processing of a claim. The only common-law claim argued in *Kassab* was fraud, a claim the Court allowed to proceed.

[12] Commentators agree that courts should be flexible when ruling on what damages are available for breach of contract. Professor Corbin notes:

The rules of law governing the recovery of damages for breach of contract are very flexible. Their application in the infinite number of situations that arise is beyond question variable and uncertain. Even more than in the case of other rules of law, they must be regarded merely as guides to the court, leaving much to the individual feeling of the court created by the special circumstances of the particular case. [5 Corbin, Contracts, § 1002, p 33.]

Likewise, professors Calamari and Perillo observe:

It should be noted that the rule is not applied blindly and mechanically. Courts must be aware of the transactional context in which the transactions occur. [Calamari & Perillo, Contracts (3d ed), § 14-7, p 599.]

[13] The objective standard has been approved by a number of commentators, Corbin, n 12 *supra*, § 1009-1012, pp 77-89, Calamari & Perillo, n 12 *supra*, § 14-5, p 595, Dunn, Recovery of Lost Profits, n 8 *supra*, § 1.6, p 17, the Uniform Commercial Code, MCL 440.2715(2)(a); MSA 19.2715(2)(a) (specifically rejecting the "tacit agreement" test in comment 2), and the Restatement Contracts, 2d, § 351 (specifically identifying the test as an objective one in comment a, p 135). While Michigan precedent is not entirely clear on the subject, e.g., *Huler v*

defendants' application of the objective standard that this Court disagrees.

Specifically, the defendants maintain that

> [i]n order for a plaintiff to establish a prima facie entitlement to lost profits damages for the breach of a commercial contract, he must present evidence to overcome the presumption of the availability of funds in the marketplace and show that, at the time the contract was made, the insurer knew that, if the contract were breached, it would be impossible for the insured to procure money in the marketplace.

The *Hadley* rule, as stated in *Kewin,* demands no such showing, requiring only that "[t]he damages recoverable are those damages that arise naturally from the breach,[14] or which can *reasonably* be said to have been in contemplation of the parties at the time the contract was made." *Id.* at 419 (emphasis added). Applying this objective standard, restated by Calamari and Perillo as damages "the promisor knows or has reason to know" about, the plaintiff submitted enough evidence regarding the element of foreseeability to make out a prima facie case for lost profits. Calamari & Perillo, Contracts (3d ed), § 14-5, p 595.

The plaintiff introduced the insurance policy, which noted on its face that the truck would be used for commercial purposes, namely, to haul dry freight. The policy named the plaintiff, individually, as the insured and covered only the one truck. The plaintiff introduced the testimony of

*Nasser,* 322 Mich 1; 33 NW2d 637 (1948), we agree with the defendants that in this context a thorough review of Michigan's law on foreseeability indicates approval of the objective test. See *Kewin* at 431 (WILLIAMS, J., dissenting).

[14] Although consequential damages might also be available in a commercial setting when they arise naturally from a breach of contract, analysis of this possibility is not necessary because the plaintiff presented sufficient evidence of foreseeability under *Hadley.*

two employees of Will Darrah & Associates,[15] the vice president and the adjuster handling the plaintiff's file. The vice president testified that he understood that the insured's vehicle was used for commercial purposes and that the loss of that vehicle would result in lost profits unless it was replaced. The adjuster also testified that he was aware that the truck was used for making profits. The adjuster further testified that Will Darrah & Associates' primary source of business was insuring trucking concerns. Finally, the plaintiff introduced the testimony of Ronald Fawcett, president of Fawcett & Associates and the retail agent responsible for the plaintiff being insured with Will Darrah & Associates. Mr. Fawcett testified[16] that the insurer was aware that many of the clientele procured by Mr. Fawcett were one-truck owners, and that these owners would suffer if deprived of the use of their trucks, their sole sources of income.

The evidence in this case, when combined with the nature of the underlying transaction,[17] was

---

[15] At the time of trial, Will Darrah & Associates had changed its name to Quantex Corporation.

[16] The defendants argue before this Court that Mr. Fawcett's testimony could not have been used by the judge or the jury to demonstrate that lost profits damages were foreseeable. Defense counsel failed to object to plaintiff's use of this testimony during Mr. Fawcett's deposition or at any time thereafter. The failure at trial to object to or challenge in some way Mr. Fawcett's testimony prevented the plaintiff from having the opportunity to address it below. Furthermore, even had the defendants not waived this objection, under the objective standard of foreseeability, Mr. Fawcett's testimony is admissible to prove what the parties reasonably could have or should have known at the time the contract was entered into.

[17] We disagree that the nature of the transaction alone can never be enough. The defendants' assertions about the availability of money in the marketplace do not necessarily ring true in the insurance contract setting:

Legal rates of interest, however, fall far short of commercial rates and the credit worthiness of an insured following a loss

sufficient to allow a jury to infer that at the time the parties entered into the contract, the defendants reasonably knew or should have known that in the event of breach this plaintiff would lose profits. Under Michigan law, the plaintiff presented a prima facie case.

The defendants' assertion that the plaintiff must prove he could not obtain money in the marketplace to establish a prima facie case confuses the contemplation requirements of *Hadley* with mitigation. At common law, while a plaintiff has a duty to mitigate his loss, it is the defendant who bears the burden of proving a failure to mitigate, *Edgecomb v Traverse City School Dist,* 341 Mich 106, 115; 67 NW2d 87 (1954).[18] In the instant case, the defendants did not plead mitigation,[19] nor did they attempt to support it with proofs at trial.[20]

### CONCLUSION

The plaintiff presented sufficient evidence that

may be doubtful. In fact, the insured's purpose in obtaining insurance is often intended to avoid the financial losses the insured would otherwise be unable to bear. [Freemon, *Reasonable and foreseeable damages for breach of an insurance contract,* 21 Tort & Ins L J 108, 111 (1985).]

[18] Similarly, the Uniform Commercial Code imposes a duty on a plaintiff to mitigate damages, while placing the burden of proving a failure to mitigate on the defendant, MCL 440.2715; MSA 19.2715. See *Lorenz Supply Co v American Standard, Inc,* 100 Mich App 600, 610; 300 NW2d 335 (1980), aff'd 419 Mich 610; 358 NW2d 845 (1984).

[19] The dissent's argument regarding the timeliness of the institution of plaintiff's action is arguably a claim that plaintiff should have mitigated, a claim that defendants did not make below.

[20] The dissent's "slippery slope" arguments are unconvincing. Apart from the requirements of *Hadley* itself, in the vast majority of cases, plaintiffs will be barred from recovering consequential damages because the defendant complied with the requirements of MCL 500.2006(3); MSA 24.12006(3), by paying the insured's claim in a timely fashion. Further, in those cases in which consequential damages are recoverable, most defendants will argue mitigation in the trial court. Finally, nothing in this opinion prevents insurers from limiting possible contract damages in the policy itself.

the parties knew or had reason to know that lost profits would occur if the defendants breached the contract. We reverse the decision of the Court of Appeals, and remand the case to the trial court for recalculation of interest.

CAVANAGH, C.J., and BRICKLEY, RILEY, and MALLETT, JJ., concurred with BOYLE, J.

LEVIN, J. (*dissenting*). I would affirm the decision of the Court of Appeals.

I

The factual predicate for the premise of the majority that there was a significant delay in payment by the defendant insurer is tenuous. It appears that the insurer, Underwriters at Lloyds of London, offered to pay $19,250, the agreed value of the tractor-trailer,[1] within the sixty days, prescribed by statute, "after receipt of proof of loss by the insurer."[2]

The plaintiff, Benjamin T. Lawrence, declined the offer of $19,250 because the insurer refused to compensate the plaintiff for "down time." Lawrence sought remuneration for "down time" because of an asserted delay in payment.

Lawrence's lawyer forwarded, on May 12, 1982,

---

[1] The truck was purchased in November, 1981, for $21,000. The parties ultimately agreed, by August, 1982, that the value of the truck in January, 1982, the date of the loss, was $19,500. There was a $250 deductible for theft.

[2] The act provides that a claim "shall be deemed to be paid on a timely basis if paid within 60 days after receipt of proof of loss by the insurer," and that interest at the rate of twelve percent per annum is payable if there is a failure to pay within sixty days "after satisfactory proof of loss was received." MCL 500.2006(3), (4); MSA 24.12006(3), (4).

The policy of insurance does not contain a provision requiring that payment of the claim be made within a specified time.

a proof of loss, dated May 10, 1982,[3] under cover of a letter stating, "[a]t this time, we claim lost wages, mental anguish and other expenses in the amount of $40,000 in addition to the monies claimed under the policy of insurance issued by Lloyds."

The insurer declined to increase its offer to include "down time," or the other elements of damage claimed by Lawrence's lawyer, and promptly so notified Lawrence. After this action was commenced, in April 1985, Lawrence's then-lawyer acknowledged that the policy of insurance did not provide coverage for "down time."

It was not until August 28, 1982, that the insurer might be said to have "received" "satisfactory" proof of loss. On that date, the issue regarding the value of the tractor-trailer having been resolved, the insurer forwarded to Lawrence a proof of loss which, in effect, offered to settle for $19,250 on the understanding that Lawrence's acceptance would, in effect, waive his claim for "down time" and the other asserted claims.[4]

Because the statute[5] provides that a claim shall be deemed to be paid timely if paid within sixty days after receipt of proof of loss by the insurer, payment by the insurer by the latter part of October would have been timely.

It could not properly be said that the insurer acted unreasonably in declining to pay the $19,250 unless Lawrence waived his claim for "down time"

---

[3] The proof of loss included a claim for contents (personal property such as cassette tapes, a sleeping bag and tools) in the amount of $535. The record indicates that a number of weeks elapsed before Lawrence was satisfied that the policy did not cover contents.

[4] The insurer refused to pay the $19,250 unless Lawrence signed a proof of loss that did not include a claim for "down time."

[5] See n 2.

and the other elements of damage asserted in his lawyer's letter, under the circumstances that

- Lawrence's claim for mental anguish was clearly barred by this Court's decision in *Kewin v Massachusetts Mutual Life Ins Co,* 409 Mich 401; 295 NW2d 50 (1980),[6]

- there was and is, until today, no decision by either the Court of Appeals or this Court upholding an award of consequential damages for delay by an insurer in payment to an insured[7] and

---

[6] In *Kewin,* this Court set aside jury verdicts that included $75,000 for mental or emotional distress and $50,000 for exemplary damages for delay in payment under policies providing for disability income protection insurance and life insurance. The Court affirmed the awards of $16,500 for breach of the disability insurance contract, and $798.40 for breach of the life insurance policy. *Id.* at 423.

The Court reviewed the rule set forth in *Hadley v Baxendale,* 9 Exch 341; 156 Eng Rep 145 (1854), and the discussion in Corbin on Contracts and the Restatement of Contracts of the rule of law there stated respecting damages for breach of contract, and concluded that the application of the rule "in the commercial contract situation generally results in a limitation of damages to the monetary value of the contract had the breaching party fully performed under it." *Kewin, supra,* pp 414-415.

[7] The majority relies on *Miholevich v Mid-West Mutual Auto Ins Co,* 261 Mich 495; 246 NW 202 (1933). There an automobile insurer promised to satisfy any judgment rendered against the plaintiff, but, as set forth in *Kewin, supra,* p 417, "wilfully neglected to satisfy it until after the plaintiff had been placed in jail for failure to pay the judgment."

*Miholevich,* thus, did not concern a failure by an insurer to pay the insured, but rather a failure to pay a third party. The injury suffered in *Miholevich,* loss of liberty, is clearly different from the loss, in excess of the statutory twelve percent, of the use of money asserted in *Kewin* and in the instant case.

This Court in *Kewin* did not regard *Miholevich* as precedentially supporting the claim for mental distress and exemplary damages asserted in *Kewin.*

*Alderton v Williams,* 139 Mich 296; 102 NW 753 (1905), also relied on by the majority, was not an action against an insurance company, but rather an action to recover $5,000 that the plaintiff claimed to have advanced as surety for the defendants in payment of six notes on which the plaintiff and the defendants were joint makers. The

- the statute provides for payment of interest at twelve percent if there is a failure to pay within sixty days "after satisfactory proof of loss was received."[8]

In all events, in August, 1982, and, sixty days later, October, 1982, Lawrence had no valid claim for lost profits because payment by the latter part of October, 1982, would have been timely under the statute. Lawrence delayed the commencement of this action almost three years, until April 22, 1985. Lawrence did not file a motion for partial summary disposition for an additional three and one-half years, until October 25, 1988, shortly before the trial of the instant action, whereupon judgment was entered for $19,250 in Lawrence's favor.

It therefore appears that had Lawrence promptly filed this action, and had promptly moved for partial summary disposition, he could have obtained payment of the $19,250 before the end of 1982. Lawrence was not without an effective remedy for any delay in payment after October, 1982, of the agreed-upon loss in the amount of $19,250.

Whatever may be the correct resolution of our conflicting views regarding the recovery of lost profits for delay in payment of an insurance claim, the judgment entered by the circuit court for lost profits over a five and one-half-year period[9] is problematic under the circumstances that pay-

---

defendants claimed that after advancing the $5,000, the plaintiff refused to make further advances, and, in consequence, their joint venture failed. The jury found for the defendants, and, on appeal, the plaintiff challenged the instructions. This Court said that the principle underlying cases that limit damages for failure to loan money to the rate of interest are not applicable where the default was "not in making an agreed loan, but in contributing to a joint adventure." *Alderton, supra,* p 301. Lawrence and Lloyds of London were not engaged in a "joint adventure."

[8] See n 2 for text.

[9] From some time in 1982 through December, 1987.

ment by the insurer would have been timely as late as the latter part of October, 1982, and Lawrence delayed three years in commencing this action, and another three and one-half years in filing a motion for partial summary disposition.

Both the insurer and Lawrence were arguably at fault. The insurer could have paid the $19,250 without regard to the validity of the claims asserted by Lawrence's succession of lawyers for mental and emotional stress. But Lawrence, or one or more of his lawyers, was apparently seeking to build up a case, and the legally invalid claims made by them for "mental anguish and other expenses" contradict the assertion that Lawrence's purpose truly was to obtain prompt payment of $19,250 and no more.

## II

The facts of this case underscore that this Court should adhere to the tendency of its decisions in *Kewin* and *Kassab v Michigan Basic Property Ins Ass'n,* 441 Mich 433; 491 NW2d 545 (1992), the decision of the Court of Appeals in the instant case, and the result, if not some of the language, in *Parmet Homes, Inc v Republic Ins Co,* 111 Mich App 140; 314 NW2d 453 (1981), denying recovery for consequential damages for delay by an insurer in payment to an insured of an insurance claim. This is not the case to let the camel get his nose under the tent.

The decision of the United States Court of Appeals for the Sixth Circuit in *Salamey v Aetna Casualty & Surety Co,* 741 F2d 874 (CA 6, 1984), is not persuasive. *Salamey* purports to apply Michigan law. It predicts that Michigan would join the "few courts" that have held that an owner of a business may recover lost profits as consequential

damages for delay in payment of an insurance claim. It makes that prediction on the basis of the Court of Appeals decision in *Parmet,* where the Court, acknowledging that lost profits might be recovered in some situations, ruled that lost profits could *not* be recovered as an element of damage for delay in payment of an insurance claim.[10]

In *Salamey, supra,* p 876, Aetna defended the action by attempting to show that Salamey "had an economic motive to set the fire by introducing expert testimony that the store was losing money." I think it most unwise to incorporate into our jurisprudence, through the majority opinion in the instant case, the notion that an insurer runs the risk of becoming responsible for lost profits if it fails to establish, to the satisfaction of the trier of fact, that the insured was the person responsible for the arson loss of a business.[11]

The majority opinion will be read by insureds and their counsel as justifying an action seeking lost profits whenever there is a loss of commercial property,[12] and the insurer has not paid the claim as promptly as a trier of fact might conclude it

[10] *Lorenz Supply Co v American Standard, Inc,* 100 Mich App 600; 300 NW2d 335 (1980), adverted to by the Court of Appeals in *Parmet* and by the Sixth Circuit in *Salamey,* was an action for breach of a distributorship agreement. Lost profits might, indeed, be an appropriate element of damage in such a case.

In *Salamey* the insured had business interruption insurance. Lawrence did not.

[11] In this connection, it is noteworthy that arson was an issue in *Kassab.*

[12] The majority concludes that the "plaintiff submitted enough evidence regarding the element of foreseeability to make out a prima facie case for lost profits" on the basis that "[t]he plaintiff introduced the insurance policy, which noted on its face that the truck would be used for commercial purposes, namely, to haul dry freight," and the testimony of the vice president of the *adjustor* that he understood that the loss of the vehicle would result in lost profits unless it was replaced. *Ante,* pp 13-14.

The tendency of the majority opinion would permit recovery whenever the insured is engaged in a commercial enterprise, and it can be demonstrated, as will readily be done in almost every case, that, until

should have. If that takes hold, this Court will be asked to revisit *Kewin* so that insureds who have not lost commercial property may also recover consequential damages. The majority is entering upon a slippery slope.

### III

The remedy provided by the statute for delay in payment of an insurance claim is interest at twelve percent. I am inclined to the view that the Legislature has provided, as a matter of public policy, the sole remedy therefor.[13]

GRIFFIN, J., concurred with LEVIN, J.

the fire-damaged structure or the collision or fire-damaged truck or machinery is replaced, there will be loss of profits.

[13] See *Kassab, supra,* p 443 (LEVIN, J., concurring).