*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

INTERSTATE RESTORATION, LLC,

      Plaintiff-Appellee,

v

CHALMERS SQUARE LDHA LP and CHERRY
HILL SQUARE LDHA LP,

      Defendants-Appellants,

and

ELITE PROPERTY MANAGEMENT, LLC,

      Defendant.

UNPUBLISHED
May 08, 2026
10:03 AM

No. 372097
Wayne Circuit Court
LC No. 22-012624-CB

Before: BAZZI, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

In this contract dispute involving contested damages, defendants, Chalmers Square LDHA LP ("Chalmers") and Cherry Hill Square LDHA LP ("Cherry Hill"), appeal as of right the trial court's judgment in favor of plaintiff, Interstate Restoration, LLC, ordering Chalmers to pay plaintiff $416,380.91 for restoration work, in addition to $44,665.13 in costs and attorney fees, for a total of $461,046.04.[1] Chalmers further challenges the trial court's order granting plaintiff's motion for partial summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

---

[1] We note while Cherry Hill is identified as an appellant, all claims against Cherry Hill and defendant, Elite Property Management, LLC, were dismissed by stipulated order on July 7, 2023.

# I.  BASIC FACTS AND PROCEDURAL HISTORY

Plaintiff is a property restoration company.  Chalmers is the owner of a residential apartment building in the city of Detroit.  Chalmers is co-owned by Kathy Makino-Leipsitz and Mark Leipsitz.  On June 26, 2021, the lower levels of the residential property owned by Chalmers were damaged in a flood.  At the time, defendant, Elite Property Management, LLC, ("Elite"), was contracted by Chalmers to manage the residential property and had the authority under their agreement to enter into contracts for Chalmers under emergency situations.  Section Nine of Elite's Management Agreement with Chalmers provided:

> [N]o single disbursements shall be made in excess of [$2,500]...excepting, however, that emergency repairs involving manifest danger to life or property, or immediately necessary for the preservation and safety of the Development, or for the safety of the tenants, or required to avoid the suspension of any necessary services to the Development, may be made by [Elite] irrespective of the cost limitation imposed by this Section.

Acting under this authority, and in response to the damage caused by the flooding, Elite's manager and co-owner, Kim Hagood, hired plaintiff to restore the property.  Plaintiff performed restoration services to the Chalmers property, including the removal of drywall, sewage, and other debris.  Plaintiff sent an invoice to Chalmers.  The work agreement also incorporated a clause on auditing plaintiff's work.  Section Two of the work agreement stated, "To the extent the Client requests an audit of First Onsite's project billing, any such request must be made, if at all, in writing and no later than 120 days from Client's receipt of the final Work invoice."

Plaintiff later discovered Chalmers had been paid by their insurer $700,000, after an initial denial of the claim, for the costs of restoring the damaged property.  In August 2022, Makino-Leipsitz sent an e-mail to plaintiff requesting to arrange a partial payment plan and apologized for "not being able to get this resolved sooner."  Leipsitz stated in affidavits and his deposition that he felt plaintiff went beyond what was required to restore the property and charged excessive prices.  Plaintiff never received payment.

Plaintiff brought this suit alleging breach of contract, among other causes of action.  Cherry Hill and plaintiff reached a settlement before trial, which dismissed with prejudice the claims against Cherry Hill.  Elite moved for summary disposition, which was granted.  On January 19, 2024, plaintiff moved for partial summary disposition under MCR 2.116(C)(10), arguing there were no genuine issues of material fact as to the breach-of-contract claim and damages.  A hearing was held to address plaintiff's motion, during which Chalmers argued for the first time that Leipsitz was an expert in his field and should be given the opportunity to testify as to damages in an evidentiary hearing, which the trial court declined.  On March 29, 2024, the trial court granted plaintiff partial summary disposition and entered a judgment for plaintiff of $416,380.91 plus interest and $44,665.13 for reasonable attorney's fees and costs, for a total judgment of $461,046.04.  Chalmers moved for reconsideration, which the trial court denied.  This appeal followed.

## II. ANALYSIS

On appeal, Chalmers does not dispute its liability for the breach of contract, rather, it contends that the trial court erred by prematurely deciding the amount of damages. We disagree.

"Appellate review of the grant or denial of a summary-disposition motion is de novo, and the court views the evidence in the light most favorable to the party opposing the motion." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "This Court reviews de novo issues of contractual interpretation. If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Tripp v Baker*, 346 Mich App 257, 272-273; 12 NW3d 45 (2023) (quotation marks and citations omitted). "De novo review means we review this issue independently, without any required deference to the courts below." *Wright v Genesee County*, 504 Mich 410, 417; 934 NW2d 805 (2019). A motion under MCR 2.116(C)(10) "tests the factual support for a claim." *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). "A genuine issue of material fact exists when the record, giving the benefit of a reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds may differ." *Gen Motors Corp*, 469 Mich at 183.

"A court considers the 'affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties...in the light most favorable to the party opposing the motion.' " *Great Lakes Prop Mgmt Consultants, Inc v HP Foreclosure Solution, LLC*, 347 Mich App 691, 697; 16 NW3d 570 (2023), citing *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). At trial, the initial burden when bringing a motion for summary disposition is on the moving party, and once their burden is satisfied, the burden shifts to the nonmoving party. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). "Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. "[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Bennett v Detroit Police Chief*, 274 Mich App 307, 319; 732 NW2d 164 (2007).

"A valid contract requires: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Barclae v Zarb*, 300 Mich App 455, 471; 834 NW2d 100 (2013). "The party seeking to enforce a contract bears the burden of proving that the contract exists." *AFT Mich v State of Michigan*, 497 Mich 197, 209; 866 NW2d 782 (2015). "A refusal to perform in compliance with a valid contract amounts to a breach of a contract and may entitle the other party to damages or other forms of relief[.]" *Id*. "A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).

As previously noted, the parties do not dispute the existence of a contract, nor whether the contract was breached. Rather, the instant dispute concerns the amount of damages plaintiff is entitled to. Specifically, Chalmers contends the trial court erred by ruling on the issue of damages

-3-

when the issue was contested and presented a genuine issue of material fact. Chalmers, relying on statements by Leipsitz in his deposition and February 13, 2023 affidavit, argues that plaintiff's motion for partial summary disposition was overbroad and the issue of damages was prematurely determined.

"Damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made." *Kewin v Massachusetts Mutual Life Ins Co*, 409 Mich 401, 414; 295 NW2d 50 (1980). The question of damages is one for the fact-finder. *Lawrence v Will Darrah & Assocs, Inc*, 445 Mich 1, 14-15; 516 NW2d 43 (1994). "It is well settled that the appropriate measure of damages for breach of a contract, such as a lease, is that which would place the injured party in as good a position as it would have been in had the promised performance been rendered." *Jim-Bob, Inc v Mehling*, 178 Mich App 71, 98; 443 NW2d 451 (1989). The present claim is unusual in that Chalmers does not assert a breach of contract on the basis of plaintiff's failure to perform, but rather contends plaintiff over-performed regarding the quality of its work.

Plaintiff established damages by providing copies of the original invoice, the scope of work document, and the Chalmers work agreement. The invoice charged Chalmers a total of $416,380.91 for restoration work. The amended scope of work provided an outline of what plaintiff intended to complete for Chalmers. The rate schedule detailed the pricing of the services plaintiff provided. Additionally, plaintiff highlighted Section Two of the work agreement, which provides a time-limited contractual mechanism to audit plaintiff's invoices. Notably, Chalmers's insurer, Philadelphia Insurance ("Philadelphia"), compensated Chalmers for its insurance claim regarding the remediation. Chalmers, however, never remitted payment from those proceeds to plaintiff for work performed. Makino-Leipsitz implicitly approved the work performed when she apologized to plaintiff for failing to provide payment in a timely manner. Further, the record does not demonstrate effort by Chalmers to timely exercise its rights to challenge the work or invoices for payment under Section Two of the contract. As such, plaintiff established its entitlement to payment for work performed.

In support of its damages argument, Chalmers cites to Leipsitz's deposition, specifically the following exchange regarding Leipsitz's satisfaction with plaintiff's services:

*Q*. Have you identified any issues with the work or services provided by [plaintiff]? In other words, do you have any–do you believe any of the work or services were in any way deficient?

*A*. Yes.

*Q*. And what specific work or services were deficient, in your opinion?

*A*. The bill was totally overstated.

*Q*. Anything other than the bill that was, in your opinion, deficient?

-4-

*A.* Well, I'm saying they were charging a bill that you could build 10 apartments–
less than 10 apartments for, and they're just to clean water up. So, I mean,
obviously it's deficient in the–in the–in the bill.

This testimony does not raise a genuine issue of material fact because it fails to go beyond mere allegations. Stating the bill for services was deficient only provides Leipsitz's opinion without any factual support for such a contention, as does Leipsitz's comparison between the price of restoration services and the cost of general building. Chalmers presents no evidence suggesting the prices for the services rendered were inconsistent with plaintiff's estimates for the repairs or the rates for each of the specific services provided. As previously provided, plaintiff included its rate schedule for services, the pricing for the individual services, the scope of work documents, and the invoice, in its lower court filings. Defendant does not cite to any of these documents or explain how plaintiff exaggerated the costs for work performed or exceeded the necessary scope of performance. Accordingly, Leipsitz's deposition testimony fails to meet the burden required to establish a genuine issue of material fact.

Next, we address whether the statements made by Leipsitz in his affidavit are sufficient to raise a genuine issue of material fact. Chalmers argues Leipsitz's comments regarding plaintiff's reliance on insurance proceeds and its unnecessary services are sufficient. Chalmers does not quote any of Leipsitz's affidavit but claims Leipsitz stated that plaintiff's restoration services were performed with the expectation insurance would cover the costs and the services performed exceeded what was necessary for the project.[2] The Leipsitz affidavit states, in relevant part:

These facts bring in to question whether there is a valid contract at issue, whether any such alleged contract is void or voidable, whether Plaintiff began work fully aware of a risk of restricted or denied insurance coverage and thus assumed this risk, and that the work which Plaintiff did and here seeks to recover for was in excess of the work which was actually necessary and in excess in an amount that would be considered reasonable, legal, ethical, and honest.

Much like his deposition testimony, Leipsitz's statements do not raise a genuine issue of material fact because they fail to go beyond mere conjecture. Leipsitz does not point to any specific services he believes were unnecessary or provide any basis for the assertion plaintiff went beyond the scope of the work agreement. There is no indication by Chalmers or Leipsitz that plaintiff's services were exaggerated compared to what is described in the scope of work, or that the charges did not comport with the rate schedule. Consequently, Chalmers fails to show how Leipsitz's affidavit raises a genuine issue of material fact.

Chalmers implies summary disposition was inappropriate because the dispute focused on the credibility of the various individuals contesting the amount of damages. The general maxim "that the grant of summary disposition is especially suspect where motive and intent are at issue

---

[2] Chalmers's argument that Leipsitz is contesting the cost of services in this affidavit is tenuous. The affidavit makes no specific mention of the dollar amount charged and appears to focus on the scope of services performed by plaintiff.

or where a witness or deponent's credibility is crucial," *Franks v Franks*, 330 Mich App 69, 86; 944 NW2d 388 (2019) (quotation marks and citation omitted), is not applicable in this case. The present matter does not involve a question of fact requiring a determination regarding the credibility of the witnesses. Rather, plaintiff provided evidence of its entitlement to an amount of contract damages, which was not effectively rebutted by Chalmers. Once plaintiff came forward with its evidence the burden shifted to Chalmers, and Chalmers presented proofs in rebuttal that were conclusory and devoid of any factual details. *Quinto*, 451 Mich at 371-372. As such, there was nothing to preclude the grant of summary disposition.

Chalmers next argues that Leipsitz's affidavit should be considered expert testimony. MRE 104(a) provides that with expert testimony, "the court must decide any preliminary question about whether a witness is qualified." MRE 702 further states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Chalmers argues that Leipsitz is an expert in his field and the affidavit is sufficient to raise a genuine issue of material fact. However, the trial court never qualified Leipsitz as an expert. Chalmers omitted, as part of its statement of the issues, any assertion of error regarding the trial court's decision to not qualify Leipsitz as an expert witness. When the "issue is not contained in the statement of questions presented; it is therefore deemed abandoned." *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008). Because Chalmers did not raise the matter in its statement of questions presented, any claim regarding the trial court's failure to qualify Mark Leipsitz as an expert witness is abandoned.

## III. CONCLUSION

The trial court did not reversibly err when granting plaintiff partial summary disposition and entering the award of damages because the deposition testimony and affidavit presented by Chalmers are insufficient to raise a genuine issue of material fact.

Affirmed.

/s/ Mariam S. Bazzi
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle